Ara **DERDIARIAN** et al., **Plaintiffs,**

v.

The **FUTTERMAN CORPORATION**
et al., **Defendants.**

United States District Court
S. D. New York.
Sept. 8, 1965.

Herman Odell, New York City, for plaintiff.

Freedman, Levy, Kroll & Simonds, Washington, D. C., for Gruenbaum & New York Hanseatic.

Hughes, Hubbard, Blair & Reed, New York City, for R. F. Gasco, A. Schreiber and Samuel Futterman.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Futterman Corp.

Ralph H. Wiener, New Rochelle, pro se.

David H. Shapiro, New York City, for Richard K. McIntyre.

Bondy & Schloss, New York City, for L. L. Steiner.

Royall, Koegel & Rogers, New York City, for Van Alstyne, Noel & Co.

RYAN, Chief Judge:

This is an application by the defendants pursuant to Rule 23(c) F.R.Civ.P. for approval of a stipulation and agreement of compromise and settlement. A hearing on notice to all parties and to all persons who have at any time been shareholders of The Futterman Corporation (hereinafter "Futterman") has been held, at which all present were given an opportunity to be heard or object to the proposed settlement.

The amended complaint in this spurious class action filed by two shareholders of Futterman asserts two claims: [1] (1) Futterman made untrue statements and representations, and omitted material facts, relating to the "business, earnings and moneys distributed to its shareholders" in connection with the public sale of Futterman stock to plaintiffs and others similarly situated; (2) all who purchased Futterman stock after the second of its public offerings in June 1961 are entitled to recover their losses because the defendants knew or should have known that the 1961 prospectus made misleading or untrue statements, or contained material omissions. Violations are alleged of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), Securities Act of 1933 (15 U.S.C. §§ 77j (a), 77k), and the Rules of the Securities Exchange Commission. The basic claim asserted is that a cash flow projection, in the prospectus, which would have ensured a projected cash pay out to shareholders, lacked any reasonable basis, and that this should have been disclosed.

The first complaint has been twice amended; the present complaint before the Court is the Third Amended Complaint. All defendants served with process have answered and denied the allegations of wrongdoing. Pretrial discovery proceedings were had including hundreds of pages of depositions before trial and extensive examination and audit of books, records and documents under Rule 34, F.R.C.P. The suit was marked ready for trial and actual trial date had been set when final settlement negotiations were begun.

These negotiations continued over a period of almost six months before the agreement of compromise was reached. We have the assurance of counsel that the settlement was reached as a result of

1. The defendants, in addition to Futterman, include the executors of the Estate 'of Robert A. Futterman (the founder of the corporation), officers and directors of Futterman during the acts complained of, the principal underwriter of the public offering of Futterman Stock, and a financial advisor to Futterman.

arms-length dealings and negotiations, and that there are no undisclosed arrangements or agreements.

The settlement provides in summary for the following:

1. Futterman will issue up to 2,000,000 options to all shareholders who purchased stock between July 19, 1960 and April 3, 1962, one option for each such share. No options will be issued to corporate insiders or certain securities dealers who profited from dealing in Futterman stock;

2. Each option will entitle the holder to put one share of Class A stock to Futterman for $6 during the last 10 days of the two years after its issuance;

3. Futterman may call the option at any time prior to its exercise for $1.25;

4. The holder of an option who sold his stock after April 3, 1962 and before July 8, 1965 may put the option to Futterman for 70 cents within 30 days of its issuance;

5. Certain holders of Class B stock will sell a total of 29,695 shares to Futterman at $1 per share, and the Estate of Robert Futterman will surrender for cancellation an additional 40,305 Class B shares without compensation;

6. Special releases will be given to the defendants for any conduct in connection with the public offerings of stock complained of; and a bar order against further similar actions will be entered.

The cut-off dates for the shareholders who may directly participate in the settlement benefits limit it to those who purchased their shares between July 19, 1960 and April 3, 1962. The former is the date when the first registration statement for a public offering became effective. Since the charge is misinformation in the public offering, no one who purchased stock prior to the effective date of the registration statement could have been affected by the claimed misrepresentations. The termination date of April 3, 1962 is the day Futterman made public an announcement concerning its cash flow projection and change in its dividend policy. This corrected the information in the prospectus, and thus no one who purchased shares after April 3, 1962 could sustain a claim of injury by reliance on the prospectus.

The two dates represent the operative time of the alleged improper statements and the ending date set by the correction of the alleged misleading information. The dates will encompass all of the class of persons on whose behalf plaintiff sues in this lawsuit. Some persons who bought Futterman stock at other times would like the cut-off dates extended in either direction to cover their purchases. They are not, however, persons who were aggrieved by the prospectus information and cannot be heard thus to complain about this settlement.

The surrender and return of 70,000 shares of Class B stock as part of the settlement will "democratize" the corporate structure of Futterman, and will vest control of the company in the publicly held Class A shares. Until now, the 150,000 Class B shares entitled the insiders to elect two-thirds of the Board of Directors, while the 3,500,000 Class A shares could elect only one-third. The reduction in Class B stock by 70,000 shares will remove the control of the Board from the Class B shareholders and at the next election of directors, the public shareholders will have an opportunity to exercise corporate control.

We have studied the settlement agreement and upon all the facts and circumstances, we find it to be fair and reasonable, and in the best interest of all affected.

Those shareholders in the affected group will receive a refund, in part, for losses they may have suffered by the decline in price of Futterman stock since the public correction of the cash flow projection information. They will have the option of returning their stock to the corporation at a price approximately 50% above its present market. Those who have sold their shares may acquire an immediate cash payment of 70 cents per share. In addition the public shareholders will, for the first time, control the selection of directors to guide the corporate destiny in the future. Plaintiffs' counsel estimates the value of the settlement to shareholders at the sum of $2,200,000. Without passing on the correctness of this calculation, it is clear that the affected shareholders will receive a substantial benefit.

The corporation will terminate costly and time consuming litigation, which could only detract from the growth and prosperity of its business. It will henceforth be governed by directors selected by its large number of public shareholders, and the present and former directors will be released from lawsuits on claims growing out of the public stock offerings.

Even those shareholders who are not to receive immediate pecuniary benefits will participate in the settlement benefits by the knowledge that this enterprise can continue without the vexations occasioned by this lawsuit. The cash cost to their corporation will be established, and can be borne by the company without jeopardizing its future prospects.

At the hearing on the settlement, representatives of certain shareholders who had interposed objections to the settlement appeared. Each of them withdrew the objections filed. The principal objections were based upon a misunderstanding of the terms of the releases to be given to the defendants. When it was pointed out that the releases provided for were not general releases, but special releases limited to grievances within the complaint and public offering of Futterman stock, the objections were withdrawn.

The settlement thus is without objection and apparently has the unanimous approval of the parties and shareholders who are within the affected group. It has the approval of the Court.

The agreement of compromise contemplates the filing of proofs of eligibility claims by shareholders who deem themselves entitled to share in the settlement or receive the options. There will be complex and detailed questions of fact and law involved in the determination of the validity of claims filed. The general administration of the settlement plan will require close supervision by a disinterested person under the control of the Court. To accomplish these tasks, a special master will be appointed by me in the order and judgment to be entered hereon. The special master shall have all powers enumerated in Rule 53, F.R.C.P. It will be his duty to direct the parties in the necessary ministeral steps to effectuate the settlement, receive all proofs of eligibility of claims, pass on the validity of same, direct the giving of notices to interested persons of hearings on disputed claims, conduct the necessary hearings, submit his reports thereon and in general supervise the administration of the settlement plan and decide all disputed questions of law and fact connected therewith subject to confirmation by the Court. As agreed and provided for in the compromise proposal, the compensation of the special master will be fixed by the Court on application and will be paid by Futterman.

Settle order and judgment in accordance with this decision within ten days from the date hereof. The Court will retain jurisdiction and the judgment to be submitted will so provide.