Arthur BARNES, Plaintiff,

v.

Meyer OSOFSKY et al., Defendants.

Alfred N. GREENBERG et al., Plaintiffs,

v.

AILEEN, INC., et al., Defendants.

Reginald SMITH et al., Plaintiffs,

v.

AILEEN, INC., et al., Defendants.

Nos. 63 Civ. 3332, 63 Civ. 3391, 64 Civ. 2544.

United States District Court
S. D. New York.
June 8, 1966.

Weinstein & Levinson, New York City, Frank Weinstein, New York City, of counsel, and Lipper, Shinn, Keeley & Dannenberg, New York City, Richard B. Dannenberg and Aaron Lipper, New York City, of counsel, for plaintiffs and intervenor-plaintiffs.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendants Aileen, Inc., et al.; A. Edward Grashof and William C. Chanler, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendant Goodbody & Co.; Walter J. Josiah, Jr., New York City, of counsel.

Milton S. Zeiberg, New York City, for Fred Zilker and Ottavio Occhi.

Allan Joseph White, New York City, for Estate of Philip B. White.

Schwartzman, Green & Harris, New York City, for Estelle K. Bermani; Michael A. Meyers, New York City, of counsel.

Joseph F. Daley, New York City, for Securities and Exchange Commission.

RYAN, Chief Judge.

This is an application pursuant to Rule 23(c) F.R.Civ.P. for judicial approval of a stipulation and agreement of compromise and settlement. A hearing on notice to all parties, the Securities and Exchange Commission and to all persons who were shareholders of defendant, Aileen, Inc. between September 10, 1965 and December 17, 1965, was held on February 15, 1966, at which all present were given an opportunity to be heard or object to the proposed settlement.

All of these actions have been maintained under Section 11 of the Securities Act of 1933. Originally, the complaint in Greenberg et al. v. Aileen, Inc., et al. (hereinafter called the Greenberg action) alleged additional counts under Section 10(b) of the Securities and Exchange Act of 1934, in common law fraud and for punitive damages, but these three counts were eliminated in an amended complaint. The complaint in Barnes v. Osofsky et al. (hereinafter called the Barnes action), the second amended complaint in the Greenberg action and the amended complaint in Smith et al. v. Aileen, Inc., et al. (hereinafter called the Smith action) are in all material respects identical. All three actions were consolidated for all purposes by orders of this Court dated January 28, 1964 and September 28, 1964.

The complaints herein assert claims by stockholders of Aileen, Inc. on behalf of themselves and other present and former stockholders similarly situated, to recover damages for certain alleged misstatements or misleading omissions in a prospectus and registration statement of Aileen, Inc. dated September 10, 1963 and a supplement to that prospectus dated October 8, 1963 pursuant to which 200,000 shares of stock of that company were offered to the investing public at a price of $23.375 per share. In addition to Aileen, Inc., the following defendants were named in the complaints: Goodbody & Co. (the representative of the underwriting group); Samuel Kolatsh, Paul M. Schlem, Richard L. Gilbert, and Howard S. Shulman (directors of Aileen, Inc.); Meyer Osofsky and Abe Oberlin (the principal officers of Aileen, Inc. and owners of 100,000 of the 200,000 shares which were sold pursuant to the registration). Of these defendants only Aileen, Inc., Meyer Osofsky and Abe Oberlin are to contribute under the terms of the proposed settlement herein, to the settlement fund.

The principal contentions of plaintiffs upon which they allege liability in these cases, are:

1. That the Consolidated Statement of Earnings and Retained Earnings appearing on page 3 of the prospectus was false and misleading in that it failed to show that the figures for the first six months of 1962 were not truly compara-

ble with those for the first six months of 1963;

2. That defendants failed to disclose that the business of Aileen, Inc., began to decline after July 1, 1963 and failed to disclose that the bookings of one of its seasonal lines before September 10, 1963 were less than those for the same line during the same period in the previous year.

3. That the prospectus omitted material facts respecting overproduction necessitating the disposal of a large quantity of unsold inventory at substantial discounts.

These contentions and their claimed significance have been vigorously contested by the parties.

Extensive depositions before trial were had and several sets of interrogatories answered in addition to examination and audit of books, records and documents of defendant, Aileen, Inc. and of its auditors, Ernst & Ernst, by plaintiffs and plaintiffs' accountants. Plaintiffs sought and obtained orders of this Court permitting additional stockholders and former stockholders to intervene as party plaintiffs in these actions.

In December, 1964 three named defendants in the Barnes action sought and obtained an order of this Court dismissing said action as to them for failure of the complaint to state a claim against them.

Immediately prior to the commencement of negotiations which culminated in the Agreement which is now before the Court, defendants noticed the examinations before trial of several of the plaintiffs. Plaintiffs moved this Court pursuant to Rule 30(b) of the Federal Rules of Civil Procedure, for an Order directing that such examinations be dispensed with, or alternatively, be had only upon written interrogatories. This motion has been adjourned pending the outcome of this hearing and no other proceedings in these actions have been had or are presently pending.

In September, 1965 counsel for the parties commenced long and protracted settlement negotiations resulting in the Agreement of Compromise and Settlement (hereinafter called the "Agreement") dated December 16, 1965. We have the assurance of counsel that the settlement was reached as a result of armslength dealings and negotiations, and that there are no undisclosed arrangements or agreements. Copies of the Agreement, together with copies of a Notice to stockholders of this hearing and the Order of this Court to show cause why the Agreement should not be judicially approved, were mailed to all persons who were stockholders of record of Aileen, Inc. at any time between September 10, 1963 and December 17, 1965 and to the New York Regional Office of the Securities and Exchange Commission. In addition, the aforementioned Notice and Order were published in the New York Times and the Wall Street Journal.

The Agreement proposes "to dispose of and settle all claims of every nature and description which have been asserted or which could have been asserted in each of the * * * lawsuits or otherwise by virtue of the facts alleged in the pleadings as filed" and it contemplates an order forever barring such claims hereafter by any person. It provides for the deposit of the sum of $775,000 (hereinafter called the "Fund") to the credit of the lawsuits herein, with the Irving Trust Company, subject to withdrawal only by order of the Court, of which sum 50 per cent was to be, and, counsel assures us, has been contributed by defendant Aileen, Inc. and 25 per cent by each of defendants, Meyer Osofsky and Abe Oberlin.

The said Fund, in summary, is to be disbursed under the Court's supervision and direction, as follows:

1. To pay, to the extent approved by the Court, the fees, allowances and disbursements (including charges of accountants) of the counsel for plaintiffs and plaintiff-intervenors in these lawsuits and all expenses of administering the settlement and disbursing the Fund including fees, allowances and disbursements incurred by or allowed

to any Special Master or other appointee of this Court with respect thereto (except that the expenses of defendant Aileen, Inc., for mailing the above-mentioned copies of the notice of this hearing, the Agreement and the order to show cause why the Agreement should not be judicially approved, to stockholders, and the publication of the same, are to be refunded out of the Fund only if and when the Agreement receives final judicial approval);

2. No payments are to be made out of the Fund to reimburse defendants for counsel fees and other expenses incurred in connection with these lawsuits, except as provided in paragraph "1." above;

3. The balance of the Fund is to be distributed among those who beneficially acquired between September 10, 1963 and August 17, 1964 any part of the 200,000 shares of stock which were the subject of the public offering of September 10, 1963 and who make timely application, as provided in the Agreement, to participate in such distribution (such persons are referred to in the Agreement and hereinafter as "Authorized Participants").

4. The said balance of the Fund, shall be divided into two parts of which Fund A shall consist of 75 per cent and Fund B shall consist of 25 per cent of the said balance.

a. Authorized Participants who purchased their shares on or after September 10, 1963 and sold them prior to November 13, 1963 shall be entitled to participate in Fund A.

b. Authorized Participants who purchased their shares between September 10, 1063 and November 13, 1963, and who continued to hold their shares on or after November 13, 1963 shall be entitled to participate in Fund A to the extent of their loss attributable to the period between September 10, 1963 and November 13, 1963, and in Fund B to the extent of their loss attributable to the period between November 13, 1963 and August 17, 1964.

c. Authorized Participants who purchased their shares on or after November 13, 1963 shall be entitled to participate in Fund B.

d. Fund A shall be distributed, pro rata, to persons entitled to participate therein to the extent of the actual cost per share (not exceeding $23.375 per share) less the total of the actual sales price per share and all cash distributions received because of such ownership before November 13, 1963.

e. Fund B shall be distributed, pro rata, to persons entitled to participate therein to the extent of the actual cost per share (not exceeding $16.25) less the total of the actual sales price per share or of $8.875, whichever is higher, and all cash distributions attributable to such ownership which were received on or after November 13, 1963.

f. For purposes of paragraphs "d" and "e" above, the brokers commissions, stock transfer taxes and such miscellaneous charges are not included in any calculation of the cost or sale price.

5. If after complying with the above provisions, any balance of the Fund remains undistributed, it shall be paid, pro rata, to authorized participants to the extent of any hitherto unreimbursed "recognized" losses and any balance thereafter shall be refunded to the defendants contributing to the settlement, pro rata, according to the amount contributed by each.

6. Special releases will be given to the defendants for any conduct in connection with the public offering of stock complained of and a bar order against further similar actions will be entered;

7. One-half of the interest earned by the Fund prior to the date when the Final Judgment to be entered herein becomes effective and is no longer subject to appeal, shall be paid to the defendants contributing to the Fund in proportion to their contribution and the other half together with all interest earned after such date shall become part of the Fund for distribution.

There are several additional provisions in the Agreement, many of them of a procedural nature, which have been examined by the Court, but which need not be repeated here.

The cut-off dates for the shareholders who may participate in the settlement limit it to those who beneficially acquired shares between September 10, 1963 and August 17, 1964. The former is the date when the registration statement and prospectus for the public offering became effective. Since the charge is misinformation and misleading omissions in the public offering, no one who purchased stock prior to the effective date of the registration statement and prospectus could have been affected by the claimed misrepresentations. The termination date of August 17, 1964 is the date upon which the last of the lawsuits herein was commenced. Although there may be some question as to whether or not shareholders were adequately notified of the misinformation in the registration statement and prospectus prior to that date, there can be no question but that adequate information was available to all prudent interested parties by that time, correcting any misinformation and therefore, no one who acquired shares after August 17, 1964 could sustain a claim of injury by reliance on the prospectus.

It has been noted above that the first of the lawsuits herein was initiated on November 13, 1963 and the parties recognize that there is a question as to whether or not the commencement of that lawsuit should have constituted adequate notice to all shareholders and effectively cut off recovery for damages after that date. Counsel for the defendants who have contributed to this settlement have informed the Court that, but for this settlement, they intended to litigate this question as to damages. However, they concede that there was some doubt, even in their minds, as to the outcome of such a defense, and it is because of this uncertainty that the parties agreed to divide the Fund into two parts and to allot 25 per cent representing Fund B, for damages sustained after November 13, 1963, while they allotted 75 per cent representing Fund A, for damages sustained prior to November 13th. Questions as to the outcome pending litigation always weigh heavily in the thinking of parties negotiating a settlement. The parties herein have demonstrated perfectly acceptable and proper reasons for the division of the Fund into two parts.

Under the Agreement and in light of the fact that these lawsuits were maintained under Section 11 of the Securities Act of 1933, the shareholders who will participate in this settlement are limited to those who acquired any part of the 200,000 shares of the public offering which is the subject of these lawsuits. All other shareholders are excluded.

At the hearing on the settlement, certain shareholders and representatives of shareholders appeared to participate as interested parties and, in some instances, to object to the settlement. The Regional Office of the Securities and Exchange Commission also appeared for the purpose of drawing some points to the attention of the Court, but expressly refrained from any objection to the settlement. All objections raised have been withdrawn with the exception of an objection filed on behalf of Fred Zilker and Attilio Occhi who are shareholders. Their objection is to the provisions of the settlement which limit distribution to parties who have acquired part of the 200,000 shares which are the subject of these lawsuits and they maintain that other shareholders should also participate. In support of this objection, they maintain, among other things, that it would be difficult or impossible to ascertain whether or not stock acquired by any shareholder between September 10, 1963 and August 17, 1964 constituted part of the 200,000 shares which are the subject of these lawsuits or other shares issued earlier which were traded during the same period. They further maintain that since the price fluctuations of the common stock of Aileen, Inc. were all affected in the same way by the same causes, all holders of such stock should participate in the settlement.

■ The arguments of these objectants are essentially equitable in nature and as such are understandable. Since the defendants appear to be capable of segregating the shares which were issued pursuant to the public offering, which is the subject of these lawsuits, from other shares of the common stock of the corporate defendant, it would seem that the technical aspects of this objection are not well-founded. Furthermore, Section 11 of the Securities Act of 1933 and its interpretation in this Circuit, preclude participation, by shareholders whose shares were not part of the public issue complained of, in a settlement of an action maintained under that section. (Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951)). Thus, while holders of other shares may possibly have some legal remedy, it is not to be found in an action under Section 11 of the Securities Act of 1933, and their rights will not be affected by the bar order provided for in the Agreement herein. Consequently, these objectants are not entitled to participate in this settlement and, as a matter of law, their objection must be overruled.

■ We have examined the Agreement and upon all of the facts and circumstances, we find it to be fair and reasonable and in the best interest of all affected.

The shareholders in the affected group will receive a refund, in part at least, for losses they have suffered by the decline in price of their stock. Counsel for the plaintiffs and plaintiff-intervenors estimate the value of the settlement at a sum in excess of 50 per cent of their maximum possible recovery after a trial. Without passing upon the correctness of this calculation, it is clear that the affected shareholders will receive a substantial benefit. The corporate defendant will terminate costly and time-consuming litigation which could only detract from the growth and prosperity of its business, and the other defendants will be released from these lawsuits. The cash cost to the defendants has been established and can be borne by those contributing to the settlement. The Agreement of Compromise and Settlement has the approval of this Court.

The Agreement contemplates the filing of proofs of eligibility claims by shareholders who deem themselves entitled to share in the settlement. There will be complex and detailed questions of fact and law involved in the processing and determination of the validity of claims filed. The general administration of the settlement plan will require close supervision by a disinterested person under the control of the Court. To accomplish these tasks, a Special Master will be appointed by me in the order and judgment to be entered hereon. The Special Master shall have all powers enumerated in Rule 53, F.R.C.P. It will be his duty to direct the parties in the necessary ministerial steps to effectuate the settlement, receive all proofs of eligibility of claims, pass on the validity of same, direct the giving of notices to interested persons of hearings on disputed claims, conduct the necessary hearings, submit his reports thereon and in general supervise the administration of the settlement plan and decide all disputed questions of law and fact connected therewith subject to confirmation by the Court. As agreed and provided for in the Agreement, the compensation of the Special Master will be fixed by the Court on application and will be paid out of the Fund.

Settle order and judgment in accordance with this decision. The Court will retain jurisdiction and the judgment to be submitted will so provide.