Victor M. CANNON, Jr., Donald M. Green, et al., Plaintiffs,

and

Daniel M. Feeley et al., Plaintiffs-Intervenors,

v.

TEXAS GULF SULPHUR COMPANY et al., Defendants.

See also 55 F.R.D. 306.

COLONIAL REALTY CORPORATION, Plaintiff,

v.

Francis G. COATES et al., Defendants.

Lillian FREIMAN et al., Plaintiffs,

v.

TEXAS GULF SULPHUR COMPANY et al., Defendants, and 33 other actions.

Edward MILBERG, Plaintiff,

and

George Berger and Adelaide Neuwirth, Plaintiffs-Intervenors,

v.

Leslie M. CASSIDY et al., Defendants.

Edward MILBERG, Plaintiff,

v.

Edward M. LAMONT et al., Defendants.

Nos. 65 Civ. 1223, 2106, 1421, 2348, 2644, 2636, 2765, 1583, 1371, 1045, 3665, 2992, 3656, 1581, 1182, 3078, 3375, 3263, 2225, 1237, 3305, 2092, 66 Civ. 268, 719, 1095, 1037, 67 Civ. 898, 1644, 1395, 68 Civ. 4335, 69 Civ. 453, 70 Civ. 1215, 1171, 1403, 1429, 65 Civ. 2904 and 70 Civ. 1508.

United States District Court, S. D. New York.

April 11, 1972.

Lipper, Keeley, Katcher, Lowey & Dannenberg by Richard B. Dannenberg, New York City, and Sachnoff, Schrager, Jones & Weaver by Lowell E. Sachnoff, Chicago, Ill., Gen. Counsel in the consolidated Cannon class action, and for plaintiffs, plaintiffs-intervenors and the class in No. 65 Civ. 1223.

Committee of Attorneys for Plaintiffs in the Nondisclosure Claims Litigation by Nemser & Nemser, and Stanley Nemser, New York City, Chairman of the Committee, and for plaintiffs in No. 65 Civ. 2348, and in Jagerman et al. v. Texas Gulf Sulphur Company et al., Supreme Court, New York County.

Pomerantz, Levy, Haudek & Block by William E. Haudek, New York City, for plaintiffs in Nos. 65 Civ. 2105, 2106 and in Fink et al. v. Texas Gulf Sulphur Company, Colonial Realty Company et al. v. Texas Gulf Sulphur Company and Douglas et al. v. Texas Gulf Sulphur Co. et al., Supreme Court, New York County.

Irving Steinman, New York City, for plaintiff in Nos. 65 Civ. 2904, 70 Civ. 1508, and Milberg v. Cassidy et al., and Milberg v. Lamont et al., Supreme Court, New York County.

Leonard I. Schreiber, New York City, for plaintiffs-intervenors in No. 65 Civ. 2904, and for plaintiff in Berger et al. v. Fogarty et al., Supreme Court, New York County.

White & Case by Orison S. Marden, P. B. Konrad Knake, New York City, for defendants Texas Gulf Sulphur Co. et al. in all actions listed on Schedules II and III attached to the Settlement.

Davis, Polk & Wardwell by Robert B. Fiske, Jr., New York City, for Edward M. Lamont and Morgan Guaranty Trust Company of New York, as the Executors for the Estate of Thomas S. Lamont, deceased, and for Morgan Guaranty Trust Company of New York.

Cleary, Gottlieb, Steen & Hamilton by Fowler Hamilton, New York City, for defendant Texas Gulf Sulphur Company, in No. 65 Civ. 2904, Milberg v. Cassidy et al., and in Berger et al. v. Fogarty et al., Supreme Court, New York County.

Securities and Exchange Commission by John F. X. Peloso, New York City.

Andrew A. Gore, New York City, for plaintiffs in No. 65 Civ. 1045, and Harris et al. v. Fogarty et al., Supreme Court, New York County.

Sidney B. Silverman, New York City, for plaintiffs in No. 65 Civ. 1421.

Wolf, Popper, Ross, Wolf & Jones by Howard L. Jacobs, New York City, for plaintiffs in Nos. 65 Civ. 1237, 65 Civ. 3230, 66 Civ. 268, and Solomon et al. v. Texas Gulf Sulphur Company et al., Supreme Court, New York County.

Leibowitt, Milberg, Weiss & Fox by Lawrence Milberg, New York City, for plaintiffs in Nos. 65 Civ. 1371 and 65 Civ. 1583.

Cadwalader, Wickersham & Taft by Rodney Dayan, New York City, and A. Reed Reynolds, Parker M. Nielson, Salt Lake City, Utah, for Margaret E. Wright, a Member of the Cannon Class.

LaPenna & Tuckman by Louis Tuckman, New York City, for John E. De Francesco, a member of the Cannon Class.

Schwartz & Schwartz by Charles Schwartz, New York City, for George and Mary Dickey, Members of the Cannon Class.

Abraham Markowitz, New York City, for James Cloherty, Belle Etra, William Fahrbach, Sadie Stein, Rhoda Stern and Bertha Levy, Members of the Cannon Class.

Unterberg & Unterberg by Stanley Bierman, New York City, for Estelle Gross, Theodore Lampert, Lillian Smith and Albert Smith, Members of the Cannon Class.

Edwin S. Shapiro, New York City, for Joseph Dobrovir and George C. Wells, Members of the Cannon Class.

James P. Chapman, William J. Harte, Chicago, Ill., for plaintiffs in No. 65 Civ. 3115.

## OPINION

BONSAL, District Judge.

After seven years of litigation, there has been submitted to this court for approval a Stipulation of Compromise and Settlement ("the Settlement") for the purpose of finally concluding (1) the many actions now pending brought by former holders of common stock of Texas Gulf Sulphur Company ("TGS") against that Company and certain of its officers, directors and employees (hereinafter referred to as the Private Actions), and (2) derivative actions brought on behalf of TGS against certain of its officers, directors and employees (hereinafter referred to as the Derivative Actions).

The events which led to this litigation occurred in 1963–1964. TGS was engaged in mineral exploration activities near Timmins, Ontario, and beginning with November 12, 1963, drilled a number of holes on a piece of land known as the Kidd–55 Segment. On April 16, 1964, TGS announced that it had made an important mineral discovery. The Private Actions, which would be finally concluded if the Settlement is approved, involve two types of claims—

(1) Claims of former stockholders of TGS who sold their stock during the period of the mineral exploration when certain officers, directors and employees ("insiders") of TGS having knowledge of the mineral exploration purchased TGS stock and calls or obtained stock options, and who contend they would not have sold had they known of the mineral exploration. (These are referred to as the Nondisclosure Claims.)

(2) Claims of former stockholders of TGS who sold their shares in reliance on a press release issued by TGS on April 12, 1964 with respect to the mineral exploration, which they contend was false and misleading, and who contend they would not have sold had they known the true facts which were announced by TGS· in a press release issued four days later, on April 16, 1964. (These are referred to as the Reliance Claims.) Conditional class status has been granted in the *Cannon* action encompassing Reliance Claims of plaintiffs who allege they sold their TGS stock between April 12, 1964 and 10:55 A.M. on April 16, 1964. 47 F.R.D. 60 (1969). (The class is sometimes referred to herein as the Cannon Class.)

Before most of these Actions were instituted, the Securities and Exchange Commission ("SEC") filed an action in this court on April 19, 1965 (65 Civ. 1182) against TGS and certain of its officers, directors and employees ("the SEC action"), alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 promulgated pursuant thereto (17 C.F.R. 240.10b–5).

The SEC action was tried before this court, and the court's opinion is reported at 258 F.Supp. 262 (S.D.N.Y.1966). The Court of Appeals affirmed in part and reversed and remanded in part, 401 F.2d 833 (2d Cir. 1968), cert. denied,

sub nom. Coates v. SEC, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). Following remand, this court held further hearings and rendered a second decision on February 6, 1970, 312 F.Supp. 77 (S.D.N.Y.1970), which was affirmed by the Court of Appeals, 446 F.2d 1301 (1971), cert. denied, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971), with one exception not here material.

The events which led to the SEC action are the same as those which led to the actions which it is proposed to settle. These events are detailed in 401 F.2d at 840–841, 843–847 and 258 F.Supp. at 268–275, 293–294, and need not be repeated here.

*Settlement*

The actions which would be settled include 63 private actions pending in this court; 13 such actions pending in the Supreme Court of New York, New York County; 2 derivative actions pending in this court; and 3 derivative actions pending in the Supreme Court of New York, New York County. (The actions which would be settled are listed in Schedules I, II and III attached to the Settlement.) The Settlement was filed with the court on December 30, 1971 and the Stipulation of Counsel was declared effective by Order filed the same day.

The Settlement would, if approved by the court, settle all claims which have been or could have been asserted in the above described actions, and all other claims for violation of the Securities Exchange Act of 1934, the Securities Act of 1933, or any other law arising out of the subject matter embraced in the complaints in these actions.

By Order filed January 25, 1972, the court fixed a hearing on the Settlement for March 9, 1972 and directed that pursuant to Rule 23(e) and 23.1, F.R. Civ.P., notice be sent on or before January 28, 1972 to the stockholders of TGS, to the members of the Cannon Class and to the SEC, and be published twice in *The Wall Street Journal*. (A copy of the Order and of the Notice is appended at the end of this opinion as Exhibit A.)

The Notice was sent by first class mail to the SEC, to each stockholder of record of TGS on January 21, 1972, to 1400 putative members of the Cannon Class, and was published in the national edition of *The Wall Street Journal* on February 4 and February 9, 1972.

Pursuant to the Settlement, TGS has deposited $2,700,000. (the Settlement Fund) in the Bankers Trust Company, as escrow agent, where it has been invested in certificates of deposit. Interest on the Settlement Fund accrues to TGS until approval of the Settlement, and thereafter accrues to the Settlement Fund. After the payment of expenses, including attorneys' fees for plaintiffs' attorneys, the Settlement Fund is to be divided into two separate funds:

1) *The Reliance Claims Settlement Fund*, computed on the basis of $2,200,-000. less the proportion of expenses and fees attributable to this Fund. The proposed distribution of the Reliance Claims Settlement Fund is based on their recognized losses which, for purposes of the Settlement, are stated at $18.00 per share for each TGS share sold during the Cannon Class period; $13.00 per share for each TGS share sold on April 16, 1964 after 10:55 A.M. at a price in excess of $33.00; and $8.00 per share for each TGS share sold after April 16, 1964. If the total recognized losses of authorized Reliance claimants should exceed the net Settlement Fund, a pro rata distribution will be made.

2) *The Nondisclosure Claims Settlement Fund*, computed on the basis of $500,000. less the proportion of expenses and fees attributable to this Fund. The proposed distribution of the Nondisclosure Claims Settlement Fund is based on their recognized losses which, for purposes of the Settlement, are stated at $3.50 per share for each TGS share sold. If the total recognized losses of the authorized Nondisclosure claimants

should exceed the net Settlement Fund, a pro rata distribution will be made.

The Settlement was executed by over 50 attorneys or law firms representing plaintiffs, and by the attorneys for the defendants in both the Private Actions and the Derivative Actions.

The hearing pursuant to the notice was held on March 9, 1972, at which hearing all interested parties were requested to present their views in favor of, or in opposition to, the Settlement. At the hearing, the Settlement was overwhelmingly approved. Only three persons spoke in opposition:

1. *Ernest F. Boruski, Jr.*, who described himself as Agent for "Personal Pension Plan 5–Star Trust #2", holder of 1,000 shares of TGS in Street Name.

The core of his objection is stated in paragraph 4 of his "Notice of Intention to Appear", as follows:

"The principal parties who have suffered economic losses are the present stockholders. These present stockholders, who are the company, i. e., Texas Gulf Sulphur, are now being asked to shoulder the additional burdens of both the false claims of the Plaintiffs and also to pay for the costs of the nuisance suits instigated by said Plaintiffs and their attorneys in the amount of $484,000.00!"

At the hearing, the court understood Mr. Boruski's objection to be on the ground that the stockholders of TGS were innocent of any wrongdoing and he saw no reason why their assets should be used to pay former stockholders whose claims he believed to be without merit. Two stockholders of TGS wrote letters opposing the Settlement for the reasons similar to those stated by Mr. Boruski at the hearing, viz., that the Settlement was unfair to the stockholders of TGS.

2. *Margaret E. Wright*, who alleges she sold 100 shares of TGS on April 14, 1964 in reliance upon TGS' press release of April 12, 1964.

Mrs. Wright was represented at the hearing by her attorney, A. Reed Reynolds, Esq., of Salt Lake City, Utah. Mrs. Wright contends that the Settlement is not adequate, pointing out that the maximum amounts that may be recovered under the Settlement by the members of the Cannon Class will be substantially less than the amount of the judgments recovered by two stockholders similarly situated in the United States District Court of Utah, Central Division. By decision reported at 309 F.Supp. 548 (1970), aff'd as modified by the Court of Appeals for the Tenth Circuit, at 446 F.2d 90 (1971), cert. denied, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971), two TGS stockholders, Mitchell and Reynolds (a relative of attorney A. Reed Reynolds), who alleged they sold their shares in reliance on the April 12 press release, following a non-jury trial, recovered judgments against TGS and Fogarty in the amounts of $7,600. and $12,687.50 respectively. Mitchell sold 420 shares, of which 400 shares were sold on the afternoon of April 16, and an additional 20 shares which he had forgotten about, the following morning. Reynolds sold 500 shares of TGS on the morning of April 16. Mr. Reynolds estimated that the maximum recovery under the Settlement would not exceed $8.80 per share before deduction of attorneys' fees and expenses, and that these might reduce the recovery per share to $6.80, as compared to a recovery of $26.00 per share awarded by the Utah judgments, which, with the addition of interest, he estimated would approximate $40.00 per share. Using Mr. Reynolds' figures and assuming that 250,000 shares will participate in the Cannon Class settlement would indicate a possible recovery for the Cannon Class of $10,000,000. before deduction of expenses and attorneys' fees, as compared to $2,200,000. for the Reliance claimants, including the Cannon Class, before deduction of expenses and

attorneys' fees proposed in the Settlement.[1]

It will be noted that this court declined to give collateral estoppel effect to the Utah judgments (Fink v. Coates, 323 F.Supp. 988; Cannon v. Texas Gulf Sulphur Co., 323 F.Supp. 990 (1971)) and that the Utah court declined to give class status to Reynolds in his Utah action, 309 F.Supp. 566 (1970), aff'd on this point, 446 F.2d 90 (10th Cir.), cert. denied, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971).[2]

Four putative members of the Cannon Class wrote letters opposing the Settlement as inadequate. Of these, two are residents of Utah, and one a former resident of Utah—who perhaps were familiar with the Utah litigation.

3. *Harry Buchman,* a stockholder of TGS who alleges he sold 300 shares of TGS on November 22, 1963 and 200 shares on February 22, 1964, without knowledge of the TGS exploration.

Mr. Buchman stated he now holds 800 shares. He was of the opinion that the settlement of the Nondisclosure Claims on the basis of a recognized loss of $3.50 a share was not adequate.

Several letters received by the court or plaintiffs' counsel opposed the allowance of plaintiffs' attorneys' fees set forth in the Notice of Settlement.[3]

---

1. The attorneys for the Cannon Class estimate that it may include sellers of 250,000 shares although they presently know of the existence of holders of only 40,000 shares who will file claims. If holders of 122,000 shares file claims which are allowed, the recovery would be $18.00 a share before expenses and attorneys' fees. If holders of 250,000 shares file claims which are allowed, these attorneys estimate that this would amount to 30% of the maximum possible recovery if the claims were litigated, and they believe that such a settlement is excellent in that it avoids the risk of a jury trial on the issues of liability, damages and reliance.

2. Mrs. Wright claims that the notice of hearing (Exhibit A attached to the Opinion) is misleading in that a member of the Cannon Class is unable to calculate the net amount he would receive and that the reference to $18.00 per share is misleading. However, to have indicated a net amount in the notice would have been conjecture, and the notice states that what a class member will receive depends on the factors therein enumerated. The letters which the court and counsel have received do not support Mrs. Wright's claim. Mrs. Wright also claims that the notice is defective since she was not afforded the opportunity to include a provision in the notice that in light of the *Reynolds* decision and the decisions in the *SEC* action, defendants have no meritorious defenses and that the notice should include the amount of the *Reynolds* judgment. However, the function of the notice is to describe the Settlement

(White v. Auerbach, 67 Civ. 99 (S.D.N.Y. filed Feb. 11, 1972)), and the inclusion of such statements would violate the neutrality of the notice. Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 323 F.Supp. 364 (E.D.Pa.1970). Objections were heard at the hearing called pursuant to the notice.

3. According to the notice of hearing, the attorneys for plaintiffs will apply to the court for allowance of attorneys' fees as follows:

Reliance Claims — 1. Lipper, Keeley, Katcher, Lowey & Dannenberg, Esqs., and Sachnoff, Schrager, Jones & Weaver, Esqs., Co-General Counsel for the plaintiffs and the class in the *Cannon* action, will apply to the court for an allowance or attorneys' fees of $484,000. plus disbursements, to be charged against the Reliance Claims Settlement Fund of $2,200,000.

Derivative Actions — 2. Irving Steinman, Esq. and Leonard Schreiber, Esq., attorneys for the plaintiffs in the SDNY and the State Derivative suits, will apply to the court for an allowance of attorneys' fees in the respective amounts of $35,000. and $120,000., inclusive of disbursements, chargeable to the settlement funds as may be allocated by the court.

3. The Committee of Attorneys for the plaintiffs in the Nondisclosure Claims will apply to

All other persons who attended the hearing on March 9 supported the proposed Settlement on the ground that it was negotiated at arm's length over a long period of time, that it was fair and reasonable, that it would be beneficial to the Company to be freed of further litigation, that it would avoid the uncertainties and burdens of further litigation, and that the Settlement had the overwhelming support of the plaintiffs.

The SEC was represented at the hearing by Mr. John Peloso, of the New York Regional Office, who made the following statement:

"If I might, your Honor, the Solicitor has asked me to appear here to express his views. The Commission has elected not to comment substantively on the proposed settlement for the basic reason that it has not examined it in depth.

"However, I am prepared to say that the staff has, in a summary fashion, examined the proposed settlement in accordance with its normal practice and has not found anything in there so adverse to the public interest, in its view, as to impel it to comment substantively.

"Accordingly, your Honor, the Commission has asked me to express its view that its election not to comment substantively should not be construed by the Court to hold up this settlement."

In considering the adequacy of the Settlement, it will be noted that the purpose of the SEC action and of the Derivative Actions was to deprive the officers, directors and employees of TGS of any profits they realized or might realize by reason of the inside information, whether through the purchase of TGS stock or calls, or through the exercise of stock options, and to return such benefits to TGS. In this regard, the Notice of the hearing stated:

". . . the defendants Claude O. Stephens and Charles F. Fogarty have redelivered to TGS for cancellation their respective stock options to purchase a total of 20,600 shares of TGS common stock at an exercise price of $23.81 per share (the equivalent of options to purchase 61,800 present day shares after a 3 for 1 stock split at an exercise price of $7.937 per share). Harold B. Kline has been ordered in the SEC Action to pay to TGS, in the event he exercises options to purchase 12,900 post-split shares, an additional sum of $71,218.75. The defendants Charles F. Fogarty, David M. Crawford and Richard D. Mollison, turned over to TGS a total of 4,000 TGS shares at their average cost of approximately $24.00 per share (the equivalent of 12,000 present day shares after a 3 for 1 stock split at an average cost of $8.00 per share). The defendant Francis Coates paid over to TGS the sum of $26,250 pursuant to a settlement in the SEC Action representing profits realized by him and certain acquaintances. Judgments have been entered in the SEC Action in favor of TGS requiring proceeds to be held in escrow subject to further orders of the Court, against the following defendants: Kenneth H. Darke—$90,199; Walter Holyk—$35,663; Richard H. Clayton—$20,011; Thomas P. O'Neill—$13,013; and Earl L. Huntington—$2,301. Such judgments represent profits chargeable to them, and carry interest at the rate of 6% per annum from April 17, 1964. In addition, the Executors of the Estate of Thomas S. Lamont, deceased, have agreed to a contribution

Nondisclosure Claims     the court for an allowance of attorneys' fees plus disbursements, to be charged against the Nondisclosure Claims Settlement Fund of $500,000.

4. Any other attorneys may apply to the court for attorneys' fees and disbursements to be charged against the applicable settlement fund, as may be determined by the court.

to TGS in the sum of $40,000 in the instant settlement. They deny any wrongdoing on the part of the decedent and point out that a judgment was rendered in favor of the decedent in the SEC Action after trial. The decedent died pending the appeal taken by the SEC in that action, and the appeal was withdrawn. The Executors have agreed to the contribution in order to put to rest all controversy as to the Estate. Morgan Guaranty Trust Company of New York, a defendant in certain of the actions to be settled, has agreed to contribute $10,000 to the settlement, at the same time denying any involvement or wrongdoing on its part, the sole purpose of the contribution being to put to rest all controversy as to it.

"TGS recognizes that the pendency of the SDNY and State Derivative Suits was one of various inducing causes for a portion of the contributions made and to be made by certain of the defendants to TGS, as aforesaid.

"In addition, the defendants have waived indemnification by TGS to them of their contributions and expenses.

"The plaintiffs in the SDNY and State Derivative Suits have agreed to settle the derivative litigation upon the terms and conditions provided in the Settlement Stipulation after taking into consideration the attainment, in substantial part, of the recoveries sought in the derivative complaints; the substantial benefits received and to be received by the turnover to TGS of the profits realized by defendants from TGS stock purchases and by the cancellation of stock options as sought in the complaints, and by the settlement of the claims against the Executors of the decedent director in the *Milberg* action (70 Civ. 1508); the waiver, as part of the derivative settlement, by the defendants other than TGS of any right or claim to indemnification from TGS in connection with any contributions to the settlement or for any expenses, including attorneys' fees, incurred in defending these suits or related actions; the risks of further litigation; and the conclusion reached that the proposed settlement is in the best interest of TGS and its present stockholders.

"The defendants, although denying any wrongdoing or liability, have agreed to the proposed settlement in order to avoid protracted and costly litigation and to facilitate putting to rest all further controversy as to them."

In State of West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079 (2d Cir. 1971), the Court of Appeals suggested legal standards to be considered in determining whether a settlement should be approved, by quoting Judge Wyatt's statement in the court below, as follows:

" 'Whether to approve the compromise involves an exercise of discretion. The Court is responsible for the protection of the many class members whose interests are involved but who do not appear in the action. Approval should be given if the settlement offered is fair, reasonable, and adequate. These terms are general and cannot be measured scientifically.

'The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement. This factor is sometimes referred to as the likelihood of success. The Supreme Court directs the judge to reach "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and to "form an educated estimate of the complexity, expense, and likely duration of such litigation * * * and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise". The Supreme Court then emphasizes: "Basic

to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." The quotations are from Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424–425, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) [314 F.Supp. at 740–741].'" (440 F.2d at 1085)

In Glicken v. Bradford, 35 F.R.D. 144, 151 (S.D.N.Y.1964), Judge Ryan observed:

> ". . . the role of the Court is limited to the extent that its business judgment is not to be substituted for that of the parties who worked out the settlement, and that the only question before us is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval."

■ The court should give great weight to the fact that the lawyers for substantially all the plaintiffs and defendants who have been engaged in this arduous litigation for seven years unanimously support the settlement. Josephson v. Campbell, [1967–69 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,347 at 97,658 (S.D.N.Y.1969).

On February 5, 1971, this court declined to give collateral estoppel effect to the *Reynolds* case in Utah. (See Cannon v. Texas Gulf Sulphur Co., 323 F.Supp. 990 (S.D.N.Y.1971); Fink v. Coates, 323 F.Supp. 988 (S.D.N.Y.1971).) Since that decision, the Supreme Court, in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), observed:

> ". . . no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and

equity." (402 U.S. 313 at 333–334, 91 S.Ct. at 1445)

In balancing the plaintiffs' likelihood of success against the amounts offered in the Settlement with respect to the several types of claims which are encompassed in the Settlement, the following considerations suggest themselves:

1) *The Reliance Claims.*

■ The plaintiffs will have to prove at a jury trial that the April 12, 1964 press release was materially false and misleading, (List v. Fashion Park, Inc., 340 F.2d 457, 462 (2d Cir.), cert. denied sub nom. List v. Lerner, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965)); that some degree of scienter can be attributed to the persons who prepared the press release, (Astor v. Texas Gulf Sulphur Co., 306 F.Supp. 1333, 1343–1344 (S.D.N.Y.1969)); that the plaintiffs relied on the press release and that they suffered damage, (List v. Fashion Park, Inc., *supra*; *see also* Colonial Realty Corp. v. Brunswick, CCH Fed.Sec.L.Rep. ¶ 93,219 at 91,384–85 (S.D.N.Y.1971)).

Difficult issues would be presented as to the measure of damages to be applied in the event that the jury found liability, and here the trial court would not be bound by the measure of the damages applied in the Utah cases.

As previously noted, if the measure of damages in the Utah cases were to be applied, the plaintiffs eventually might obtain recoveries substantially greater than is proposed in the Settlement. However, considering the likelihood of such an eventuality against the difficulties which plaintiffs would have to overcome and the time that would be expended in such litigation, the court does not believe that the possibility that the plaintiffs might recover amounts substantially larger than those provided in the Settlement outweighs the immediate benefits to the parties of a prompt settlement.[4]

---

4. In his concurring opinion in the SEC action (401 F.2d 864), Judge Friendly made the following observations with respect to the TGS April 12 press release:

"No one has asserted, or reasonably could assert, that the purpose for issuing a release was anything but good.

### 2) *The Nondisclosure Claims.*

These plaintiffs face even more difficult problems if this litigation should be continued. A similar claim was unsuccessful in Utah, the court holding that the plaintiff could not establish any causal relationship between the plaintiffs' sale and the "insiders'" purchase. (Karlson v. Texas Gulf Sulphur Co., 309 F.Supp. 548, 558 (D.Utah 1970).) As this court stated in Astor v. Texas Gulf Sulphur Co., *supra*:

> "It will be noted that no privity appears to have existed between plaintiffs-sellers and defendants-buyers; defendants made no representations and the transactions were executed on an essentially anonymous market. Therefore, reliance which 'refers to an attitude taken by the plaintiff[-seller] towards the defendant[-buyer] * * when applied to cases of non-disclosure that involve dealings on an exchange * * * is incongruous.' Painter, Federal Regulation of Insider Trading, 106, 109 (1968)." (306 F.Supp. 1333 at 1341)[5]

### 3) *The Derivative Actions.*

As previously noted in this Opinion, much of the relief sought in the Derivative Actions has been obtained as a result of the Derivative Actions, the SEC action, and the terms of the Settlement. These include the payment to TGS of profits realized by certain defendants from purchases of stock and calls, the cancellation of stock options, and the settlement of the claims against certain defendants. Moreover, as part of the Settlement, the defendants other than TGS waive their claims for indemnification, costs and attorneys' fees in defending the actions. As pointed out by the plaintiffs' attorneys in the Derivative Actions, if the Settlement is disapproved TGS will be faced with considerable further expense and possible further unfavorable publicity.

### *Conclusion*

This litigation has been before this court since its inception in 1965. Balancing the plaintiffs' likelihood of success through further litigation against the amounts offered in the Settlement, this court is satisfied that the Settlement is fair, reasonable and adequate. Fox v. Glickman Corp., 253 F.Supp. 1005, 1012–1013 (S.D.N.Y.1966). The court believes that the Settlement was reached without collusion following arm's length negotiations extending over a period of many months. Percodani v. Riker-Maxson Corp., 50 F.R.D. 473, 477 (S.D.N.Y.1971); Derdiarian v. Futterman Corp., 38 F.R.D. 178, 179–180 (S.D.N.Y.1965); Barnes v. Osofsky, 254 F.Supp. 721, 723 (S.D.N.Y.1966), aff'd, 373 F.2d 269 (2d Cir. 1967).

Except for the three objections hereinbefore discussed, the Settlement was unanimously approved at the hearing on March 9, 1972. The Settlement is in the best interests of all of the parties

---

> * * * * *
> "The consequences of holding that negligence in the drafting of a press release such as that of April 12, 1964, may impose civil liability on the corporation are frightening." (at p. 866)
> * * * * *
> ". . . it is at least clear that the April 12 press release would be the worst possible case for the award of damages for merely negligent misstatement, as distinguished from the kind of recklessness that is equivalent to wilful fraud, see SEC v. Frank, 388 F.2d 486, 489 (2 Cir.1968)." (at p. 868)

5. In *Astor*, the court granted defendant TGS' motion for summary judgment as to Nondisclosure Claims where the plaintiffs alleged they sold their stock on or before March 27, 1964, stating, ". . . in light of the Court of Appeals decision, the court finds that TGS had no duty to disclose on or before March 27, 1964 . . . ." (306 F.Supp. 1333 at 1339.) This was the day on which TGS completed its land acquisition program. Thereafter, it resumed its explorations. Neither the Court of Appeals nor this court has held that TGS was under a duty to disclose after March 27, 1964.

(Zerkle v. Cleveland-Cliffs Iron Co., 52 F.R.D. 151, 159 (S.D.N.Y.1971)), and is approved.

Judgments may be settled on notice in accordance with paragraph 20 of the Settlement.

The matter of attorneys' fees is reserved for future hearings to be noticed by the plaintiffs' attorneys. The SEC will be invited to attend these hearings and to furnish the court with its comments.

This court retains jurisdiction for the purpose of supervising the carrying out of the terms of the Settlement.

It is so ordered.

## EXHIBIT A

United States District Court
Southern District of New York

Victor M. Cannon, Jr., Donald M. Green, et al.,
        Plaintiffs,

-and-

Daniel M. Feeley, et al.,
        Plaintiffs-Intervenors,

-against-

Texas Gulf Sulphur Company, et al.,
        Defendants.

ORDER

65 Civil 1223

Colonial Realty Corporation,
        Plaintiff,

-against-

Francis G. Coates, et al.,
        Defendants.

65 Civil 2106

Lillian Freiman, et al.,
        Plaintiffs,
Texas Gulf Sulphur Company, et al.,
    -against-
        Defendants,
and 33 other actions

65 Civil 1421, 2348, 2644, 2636, 2765, 1583, 1371, 1045, 3665, 2992, 3656, 1581, 1186, 3078, 3375, 3263, 2225, 1237, 3305, 2092
66 Civil 268, 719, 1095, 1037
67 Civil 898, 1644, 1395
68 Civil 4335
69 Civil 453
70 Civil 1215, 1171, 1403, 1429

Edward Milberg,

Plaintiff,

-and-

George Berger and Adelaide Neuwirth,

Plaintiffs-Intervenors,

-against-

Leslie M. Cassidy, et al.,

Defendants.

69 Civil 2904

Edward Milberg,

Plaintiff,

-against-

Edward M. Lamont and Morgan Guaranty Trust Company of New York, as the Executors of the Estate of Thomas S. Lamont, Deceased, and Texas Gulf Sulphur Company,

Defendants.

70 Civil 1508

Upon the Stipulation of Compromise and Settlement ("Settlement Stipulation"), filed December 30, 1971, and upon the Order of this Court, dated December 30, 1971, declaring the said Settlement Stipulation effective and fixing March 9, 1972 as the hearing date for the determination by this Court whether the proposed settlement should be approved as fair, reasonable and adequate, and upon the annexed consents, it is hereby

Ordered, that Notice of the hearing previously scheduled by this Court for March 9, 1972, substantially in the form annexed hereto, shall be given by first class mail, postage prepaid, on or before January 28, 1972:

(i) To all shareholders of record of Texas Gulf Sulphur Company at the close of business on January 21, 1972, at their respective addresses as registered on the stock records of Texas Gulf Sulphur Company; and

(ii) To the members of the Class in the above entitled *Cannon* action at their last known addresses as shown on the Revised Class Mailing List to be filed with the Court;

(iii) To the Securities and Exchange Commission, Washington, D. C. 20549, and it is further

Ordered, that additional Notice of said hearing shall be given by publishing said Notice, substantially in the form annexed hereto, once each week for two consecutive weeks in the national editions of *The Wall Street Journal*, commencing during the week of January 31, 1972; and it is further

Ordered, that the cost of giving such notice shall be advanced by Texas Gulf Sulphur Company, to be hereinafter reimbursed to it from the settlement fund pursuant to the provisions of paragraph 7(b) of the Settlement Stipulation, and it is further

Ordered, that such mailing and publication shall constitute due and sufficient notice of said hearing; and it is further

Ordered, that the Court reserves the right to approve the said proposed settlement with modifications without further notice; and it is further

Ordered, that any member of the *Cannon* class who has not heretofore requested exclusion, and any present stockholder of TGS, may appear at the hearing, in person or by duly authorized attorney, and be heard on any proper argument and submit any proper evidence relating to the foregoing matters before the Court; provided, however, that no such person shall be heard and no papers and briefs submitted by such person shall be received or considered by the Court, except as the Court may in its discretion direct, unless notice of intention to appear, a statement of the position to be asserted and the grounds therefor, and copies of such papers and briefs are filed with the Clerk of the Court on or before March 2, 1972.

Dated: January 25, 1972

(s) Dudley B. Bonsal