Victor M. **CANNON, Jr.,** Donald M. **Green, et al., Plaintiffs,**
and
Daniel M. **Feeley et al., Plaintiffs-Intervenors,**
v.
**TEXAS GULF SULPHUR COMPANY et al., Defendants.**

No. 65 Civ. 1223.

United States District Court, S. D. New York.

Feb. 5, 1971.

---

2. Reynolds v. Texas Gulf Sulphur Company, 309 F.Supp. 566, Amended Findings of Fact and Conclusions of Law, filed 1/13/70.

Lipper, Keeley, Katcher, Lowey & Dannenberg, New York City, Sachnoff, Schrager, Jones & Weaver, Chicago, Ill., for plaintiffs; Richard B. Dannenberg, New York City, and Lowell Sachnoff, Chicago, Ill., of counsel.

White & Case, New York City, for defendants; Orison S. Marden, P. B. Konrad Knake, and Thomas McGanney, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Eight plaintiffs move on behalf of themselves and the class they represent (1) for an order pursuant to Rule 56, F.R.Civ.P., granting partial summary judgment against defendants Texas Gulf Sulphur Company (TGS), Claude O. Stephens, Charles F. Fogarty, Richard D. Mollison, and Earl L. Huntington, or, in the alternative, (2) for an order pursuant to Rules 56(d) and 16, F.R.Civ.P., simplifying the issues.

This action arises out of events of November, 1963 through April, 1964 when TGS discovered valuable ore bodies in Timmins, Ontario.[1] Following announcement of the discovery, the Securities Exchange Commission (SEC) instituted an action against TGS and certain of its officers and directors (the SEC action). The SEC alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated pursuant thereto. The complaint brought by the SEC alleged in part that TGS had issued a materially false and misleading press release on April 12, 1964 with respect to

---

1. These events are not detailed here since they are set forth in the opinion of the District Court, S. E. C. v. Texas Gulf Sulphur Co., 258 F.Supp. 262, at 268–275, 293–294 (S.D.N.Y.1966); in the opinion of the Court of Appeals, 401 F.2d 833, at 840–841, 843–847 (2d Cir. 1968); and in the opinion of the District Court of Utah in Reynolds v. Texas Gulf Sulphur Co., 309 F.Supp. 548, at 551–556 (D.Utah 1970).

its activities in Timmins, Ontario. The issue of liability was tried to this court, S.E.C. v. Texas Gulf Sulphur Co., 258 F.Supp. 262 (S.D.N.Y.1966). The Court of Appeals remanded, 401 F.2d 833 (2d Cir. 1968), cert. denied, Coates v. S.E.C., 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), directing that this court reconsider the April 12, 1964 press release in light of its opinion. On remand, this court held that the April 12 press release was misleading to the reasonable investor in the exercise of due care, that the framers of the release failed to exercise due diligence in its issuance, and that TGS had violated Section 10(b) and Rule 10b–5, 312 F. Supp. 77 (S.D.N.Y.1970).

This action was instituted by former shareholders of TGS. The complaints allege that TGS and certain of its officers and directors issued the April 12 press release, and that the release was knowingly false and misleading as to material facts, in violation of Section 10(b) and Rule 10b–5. This action has been conditionally determined to be a class action, Cannon v. Texas Gulf Sulphur Company, 47 F.R.D. 60 (S.D.N.Y.1969), and by order dated November 10, 1969, and amended order dated June 19, 1970, the class has been defined as:

> "all former shareholders of the common stock of Texas Gulf Sulphur Company who claim they sold their stock between April 12, 1964 and 10:55 A.M. on April 16, 1964 in reliance upon the April 12, 1964 press release issued by Texas Gulf Sulphur Company relating to exploratory activities in Timmins, Canada."

Plaintiffs allege that they sold TGS common stock between April 12 and 10:55 A.M. on April 16, 1964, in reliance on the April 12 press release and seek money damages.

Plaintiffs seek partial summary judgment on the grounds (1) that defendants are estopped from denying the material falsity of the April 12 press release, their knowledge of its falsity, and the reasonable reliance thereon of the named plaintiffs when they sold their shares, by reason of the decision of the United States District Court of Utah in Reynolds v. Texas Gulf Sulphur Company, 309 F.Supp. 548 (D.Utah 1970) and the decisions of this court and the Court of Appeals in the SEC action; (2) that there exists no genuine issue as to a material fact that the defendants knew that the April 12 press release was false and misleading when they prepared and issued it, as shown by discovery heretofore taken.

■ In claiming collateral estoppel, plaintiffs point to Reynolds, a consolidated action brought by other former shareholders of TGS under Section 10(b) and Rule 10b–5 against TGS and Fogarty. Reynolds held that the April 12 press release was "misleading, intentionally deceptive, inaccurate and knowingly deficient in material facts pertaining to the results of drilling" and violated Section 10(b) and Rule 10b–5 (309 F.Supp. at 562). Plaintiffs contend that because of Reynolds, defendants are estopped from denying the material falsity of the April 12 press release and their knowledge of its falsity.

The only defendants in Reynolds were TGS and Fogarty, so that collateral estoppel could only apply to them, and not to the other defendants against whom partial summary judgment is sought. 1B, Moore Federal Practice, ¶. 411 [1965]. See also, Bruszewski v. United States, 181 F.2d 419 (3d Cir.), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950). For the reasons stated in Fink et al. v. Coates et al., 323 F.Supp. 988, filed this date, the court in its discretion denies the motion for partial summary judgment insofar as it is based on Reynolds.

With respect to the SEC action, this court stated on the remand:

> "All of the shareholders [witnesses at the trial on remand] appear to have been reasonable investors as that term has been defined by the Court of Appeals, and all were influenced by the

press release * * *. (312 F.Supp. at 83.)

* * * * * *

"[T]he press release is found to have been misleading to the reasonable investor using due care, and since the framers did not exercise due diligence in its issuance, TGS violated Section 10(b) and Rule 10b–5." (312 F.Supp. at 86.)

Plaintiffs contend that defendants are estopped from denying the material falsity of the April 12 press release and the reasonable reliance thereon of the named plaintiffs[2] by reason of these findings by this court. However, since the argument of this motion, the 5th Circuit Court of Appeals decided Rachal v. Hill et ux., 435 F.2d 59 (5th Cir. 12/3/70). In that case, the principal issue presented on appeal was whether the district court was correct in holding that the finding that the defendant had violated the securities laws of the United States in an SEC injunction action precluded the relitigation of that issue in a subsequent trial of a private action under the doctrine of collateral estoppel. In holding that the district court erred, the Court stated:

"It is clear that had it not been for the prior adverse determination of the issue of liability by the district court sitting without a jury in the S.E.C. injunction proceeding, the appellants would have been, without question, entitled to a trial by jury as a matter of right under the Seventh Amendment to the United States Constitution and Rule 38, Federal Rules of Civil Procedure. The central question thus presented is whether a litigant can lose his constitutional right to a trial by jury by estoppel when the issue to be decided has been adjudicated adversely to him in a prior proceeding at which there was no right to a trial by jury and his present adversary was not a party.

* * * * * *

"In light of the great respect afforded in Beacon Theatres, supra, and its progeny, for a litigant's right to have legal claims tried first before a jury in an action where legal and equitable claims are joined, it would be anomalous to hold that the appellants have lost their right to a trial by jury on the issue of whether they are liable to respond in damages for violations of the security laws because of a prior adverse determination by the district court of the same issue in an action in which their present adversary was not a party and which arose in a different context from the present action. Beacon Theatres, supra, makes it clear that had Hill been a party plaintiff in the S.E.C. injunction action and there presented his claim for damages, the appellants would have received a jury trial on the issue of liability. It hardly makes sense that Hill can now assume a position superior to that to which he would have been entitled if he had been a party to the prior action. Accordingly, we hold that the application of the doctrine of collateral estoppel was not appropriate in view of the particular circumstances presented by this case and that the district court erred in granting summary judgment on the issue of liability."

(Id. at 9, 12.) (Footnote omitted.)

Plaintiffs and plaintiff-intervenors have demanded a trial by jury on all issues in accordance with Rule 38, F.R.Civ.P., and defendants are entitled to rely on this demand since "[a] demand for a trial by jury made as herein provided may not be withdrawn without the consent of the parties." Rule 38(d), supra; See, Collins v. Government of Virgin Islands, 366 F. 2d 279 (3d Cir.) cert. denied, 386 U.S. 958, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1966). The parties to the SEC action waived a jury as to any legal claims that were there involved. It does not follow

---

2. Six of the named plaintiffs were witnesses at the trial on remand; the remaining two named plaintiffs are wives whose husbands were witnesses.

that they would have waived a jury had these plaintiffs and plaintiff-intervenors also been parties. Therefore, in the light of *Rachal*, defendants are not collaterally estopped by the findings in the SEC action.

█ Finally, plaintiffs contend that the discovery which they have conducted establishes that the defendants knew that the April 12 press release was false and misleading when they prepared and issued it.

This discovery brought out that at the time the April 12 press release was issued, TGS, through defendant Huntington and others, was conducting negotiations for the acquisition by TGS of an interest in property near the discovery from a Canadian Estate, for the price of $57,000. One of these documents is a handwritten memorandum of Huntington, dated March 25, 1964, of a telephone call he made to a Mr. Dwyer of the Royal Trust Company, Hamilton, Ontario, the representative of the Canadian Estate, which reads as follows:

"I called Mr. Dwyer of the Royal Trust Co. in Hamilton, Ontario, this morning re the following: * * * I asked what action had been taken re our offer to buy their net profits interest. He indicated no final action had been taken but that the matter would be presented to their review board (largely a pro forma action) which meets the second Tuesday of every month. He stated he would make certain of the date of the meeting and let me know. I told him that we had been thinking of putting a deadline of April 1, 1964, but under this circumstance I thought we would want to give them enough time for their board to act on the matter. He indicated he would call me as soon as they acted and confirm the call by letter. I suggested that the closing be held on or about April 15, 1963 [sic] * * * in Toronto. The place seemed acceptable but the time appeared too early * * * They were attempting to get

into a position to give us the title within the 60 days following notice of exercise provided in our Agreement. He was going to check on this matter and let me know. I did advise him that we were going to exercise the option * * *.

P.S. He said, upon my request, that he would have a draft of the proposed deed of transfer to TGS sent to W. M. Bryden and myself for our approval. They would also obtain the governmental consents."

A second document is a handwritten memorandum of Huntington dated April 8, 1964, of a subsequent telephone conversation with Mr. Dwyer, which reads as follows:

"On Monday of this week [April 6th] * * * I talked to Mr. Dwyer of Royal Trust re the proposed offer to buy the 10% net income interest. The Board which would pass upon our offer was to meet Tuesday. I later called and told Mr. Dwyer that, as they undoubtedly surmised from our offer, we had found something that looked good, that we had drilled one hole that made us optimistic. Being miners, we were in a sense gamblers, and so our offer to buy the 10% interest. I asked him to hold this disclosure in confidence and he said he would."

Plaintiffs point to Huntington's statement in his April 8 memorandum that "we had found something that looked good, that we had drilled one hole that made us optimistic," and contend that comparison of the April 12 press release with this earlier statement "leaves no room for doubt [that] the press release was pessimistic at a time when the defendants concededly were optimistic * * * [and] destroy[s] any claim by the defendants that they acted in good faith in issuing the April 12 press release." However, the court does not find in Huntington's references to having found something that "looked good" or that they were "optimistic" sufficient

evidence to establish that defendants knew that the April 12 press release was false and misleading when they prepared and issued it. While the statement may support such an inference, "for the purposes of the motion for summary judgment, all factual inferences will be taken against the moving [party] and the motion will be granted only if there is no genuine issue as to any material fact." Entel v. Allen, 270 F.Supp. 60, 64 (S.D. N.Y.1967).

Plaintiffs also point to the fact that these memoranda indicate that TGS knew that the trustees of the Canadian Estate would meet on the second Tuesday in April (the 14th) to consider TGS' offer for the interest, and contend that the defendants knowingly issued a false and misleading press release on April 12 in an effort to consummate the purchase. Plaintiffs assert that the statement in the April 8 memorandum that, "We had drilled one hole" is evidence of TGS' lack of candor in its dealings with the representative of the Estate, as in fact, the record is clear that by April 6, the date of the conversation, further drilling had taken place, indicating that TGS may indeed have made a major discovery. Defendant Stephens stated in his deposition that he gave thought to the effect that the April 12 press release might have on these negotiations when he approved the release.

If defendants issued a materially false and misleading press release to deceive the Canadian Estate with which TGS was negotiating, they would be liable to any TGS shareholder who sold his shares in reliance thereon. See, Heit v. Weitzen, 402 F.2d 909 (2d Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969).

However, such a purpose has not been proved by plaintiffs' discovery. A letter, dated April 15, from the Canadian Estate to TGS, states that the Estate is "considering your offer and shall inform you of our decision in the very near future." Thus, the trustees of the Canadian Estate did not meet on April 14, or if they did, they took no action on TGS' offer. By the time this letter reached TGS, the April 16 press release had been issued stating the extent of TGS' discovery. While Stephens testified that he had the negotiations in mind when he directed the issuance of the April 12 press release, he also stated:

"The rumors that had been emanating since the middle of the week of the 6th of April would negate any possible negotiations with a landholder in that area, and as a consequence I had written them off, really."

Judge Frank has stated:

" * * * trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts * * * ." Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 135 (2d Cir. 1945),

and this court stated in Astor v. Texas Gulf Sulphur Company, 306 F.Supp. 1333, 1344 (S.D.N.Y.1969) that:

"In determining issues of motives, intentions, or knowledge, summary judgment should be used sparingly * * * ."

Accordingly, plaintiffs' motion for partial summary judgment is denied. There remain issues of fact to be tried including the material falsity of the April 12 press release, scienter, reliance, and damages.

The court has set May 17, 1971 for the trial of this action. Pre-trial order to be submitted on consent or settled on or before April 15, 1971.

It is so ordered.