427 F.Supp. 1211 (1977)
In re TRANSOCEAN TENDER OFFER SECURITIES LITIGATION.
Lillian H. McNALLY et al., Plaintiffs,
v.
ESMARK, INC., et al., Defendants.
Nos. MDL-223 and 74 C 2985.
United States District Court, N. D. Illinois, E. D.
January 24, 1977.
*1212 *1213 Arthur T. Susman, Richard H. Prins, Arnold M. Flamm, Robert D. Allison, Prins, Flamm & Susman, Ltd., Alex Elson, Willard J. Lassers, Aaron S. Wolff, Elson, Lassers & Wolff, Chicago, Ill., for plaintiffs.
Robert L. Stern, Leo Herzel, Susan Getzendanner, Robert K. Hagan, Mayer, Brown & Platt, Chicago, Ill., for Esmark, Inc., Vickers Energy Corp., the directors of Esmark, Inc. and certain directors of TransOcean Oil, Inc.
William Key Wilde, Bracewell & Patterson, Houston, Tex., for defendants Stormy F. Smith, Edward J. Hudson and William A. Alexander.
John B. Holstead, Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., for defendant TransOcean Oil, Inc.

MEMORANDUM AND ORDER
ROBSON, Senior District Judge.
This cause is before the court on the plaintiffs' motion for summary judgment as to liability on Count I of their complaint and on defendants' motion for summary judgment on Counts I and III of the plaintiffs' complaint. For the reasons hereinafter stated, the plaintiffs' motion for summary judgment as to liability on Count I is denied in part, and stricken in part with leave to renew at a later date, and the defendants' motion for summary judgment on Counts I and III is granted in part, denied in part, and stricken in part with leave to renew at a later date.[1]

Background
This litigation arises out of a tender offer made by Vickers Energy Corporation ("Vickers"), a wholly-owned subsidiary of Esmark, Inc. ("Esmark"), for the minority shares of TransOcean Oil, Inc. ("Trans-Ocean"). *1214 At the time of the tender offer, Vickers was the majority shareholder of TransOcean. The gravamen of the complaint is that (1) the tender offer price was below fair value; (2) defendants coerced offers through varied illegal conduct; and (3) defendants entered into self-dealing agreements concerning the sale of TransOcean's oil and gas on terms less favorable to TransOcean than could be achieved by arm's length negotiations.
Count I of the complaint is a class action[2] brought on behalf of the minority shareholders of TransOcean at the time of the tender offer against Esmark, Vickers, TransOcean, the directors of Esmark, except Richard D. Arney, and the directors of TransOcean, at the time of the tender offer. It alleges violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934, as amended 15 U.S.C. § 78n(d)(4) and § 78n(e). Count II is a derivative claim brought on behalf of TransOcean. It charges that certain transactions, unrelated to the tender offer, between TransOcean and affiliates of Esmark were unfair to TransOcean.[3] Count III is brought derivatively on behalf of TransOcean and also on behalf of all minority shareholders of TransOcean situated similarly to plaintiffs. It alleges that the defendants breached common law fiduciary duties owed to TransOcean and its minority shareholders in connection with the tender offer. As to Counts I and II, the jurisdiction of this court is invoked under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and Section 1337 of the Judicial Code, 28 U.S.C. § 1337. As to Count III, plaintiffs assert pendent jurisdiction. The complaint seeks declaratory, injunctive, and monetary relief.
On September 24, 1975, based upon alleged misstatements and omissions of material fact in the tender offer circular, plaintiffs filed a motion for summary judgment as to liability on Count I. Between September 1975 and February 1976, the parties extensively briefed the motion. Before and during the briefing there was, pending in Delaware state court, class litigation arising out of the tender offer involving similar plaintiffs and similar claims.[4] On January 22, 1976, the Delaware Chancery Court handed down an opinion deciding the case in favor of defendants. Lynch v. Vickers Energy Corporation, 351 A.2d 570 (Del.Ch. 1976) ("Lynch"). Judgment was entered on February 26, 1976, and on March 4, 1976, defendants filed their motion for summary judgment in this case. That motion has likewise been extensively briefed. As the defendants contend that under the principles of res judicata, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and collateral estoppel Lynch precludes relitigation of all the common law and § 14(e) claims and issues in this action, the court must decide a part of defendants' motion for summary judgment before reaching plaintiffs' motion.

Count III
As noted above, the plaintiffs allege in Count III that the defendants breached common law fiduciary duties owed to both TransOcean and the minority shareholders in connection with the tender offer. The plaintiffs in this case and in Lynch are substantially identical. Both cases have been brought on behalf of a class representing the minority shareholders in TransOcean. However, there are some 187 *1215 TransOcean shareholders before this court who opted out of Lynch.
The defendants' argument with reference to Count III is two-fold. They contend that the plaintiffs who did not opt out are barred by Lynch and the principles of res judicata, as both cases involve defendants' alleged breach of common law fiduciary duties in connection with the tender offer. In addition, defendants make the novel argument that all class members, including those who opted out of the class in Lynch, are barred in this cause by Lynch and Erie Railroad Co. v. Tompkins, supra, as a matter of Delaware substantive law, not res judicata.
Plaintiffs agree that their state law claims raised in Count III would be barred by Lynch and res judicata in the usual situation. They argue that preclusion is inappropriate here because the Lynch judgment is not final and because the Lynch class notice was constitutionally defective. In addition, plaintiffs argue that preclusion will deny their right to trial by jury. Finally, they contend that the opt outs cannot be barred from asserting their state law claims here as they were not parties in Lynch. For the reasons hereinafter stated, the court concludes that the principles of res judicata bar the state law claims raised in Count III by those members of the class of plaintiffs who did not opt out of Lynch. The court further concludes that Lynch does not bar the state law claims of the opt outs.
The principles of res judicata, a doctrine judicial in origin, are well settled. The doctrine was developed to avoid repetitious suits involving the same cause of action, to foster judicial economy, and to establish certainty in legal relations. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The general rule of res judicata is that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are bound as to matters which were litigated or which might have been litigated. Id. See also Cromwell v. County of Sac, 94 U.S. 351, 352-53, 24 L.Ed. 195 (1877). Delaware law is in accord with these principles. Rumsey Electric Co. v. University of Delaware, 334 A.2d 226 (Del. Super. 1975) aff'd 358 A.2d 712 (Del.Supr. 1976); Epstein v. Chatham Park, Inc., 2 Storey 56, 52 Del. 56, 153 A.2d 180 (Del.Super.1959).
The parties do not dispute that the Delaware court had jurisdiction to entertain the state claims in Lynch. They also do not dispute that the same cause of action  common law breach of fiduciary duty  is involved in this and the Lynch litigation. Moreover, the parties in Lynch and this case are substantially the same.[5] The parties, however, do disagree on whether the decision in Lynch is a final judgment. As indicated, the plaintiffs take the position that, having been appealed,[6] the decision cannot be regarded as final. Defendants contend that the pendency of an appeal is irrelevant.
It is agreed that this court must look to the law of Delaware to determine whether the Lynch judgment is final. Ray v. Hasley, 214 F.2d 366 (5th Cir. 1954). See also Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537 (1940). It is further agreed that there is no controlling Delaware law on point. In the absence of such authority, this court should "choose the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt." Wright, Law of Federal Courts 271 (1976).
*1216 Delaware courts have often followed the Restatement of the Law of Judgments (1942) ("Restatement"). See e. g., Hughes v. Trans World Airlines, Inc., 336 A.2d 572 (Del.Supr.), cert. denied sub nom. Summa Corp. et al. v. Trans World Airlines, Inc., 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 61 (1975); Epstein v. Chatham Park, Inc., supra; Petrucci v. Landon, 9 Terry 491, 48 Del. 491, 107 A.2d 236 (Del.Super.1954). Both the Restatement and the Restatement of the Law Second, Judgments (Tent. Draft No. 1, 1973) ("Restatement Second"), in effect follow the general rule that the pendency of an appeal does not suspend the operation of a final judgment for purposes of res judicata.[7] The court believes that Delaware courts would likewise follow this rule. Moreover, this court may also give weight to "`the majority rule.'" Wright, supra, at 270-71. The federal rule and the rule followed by a majority of the states is to the same effect as the Restatement. 1B Moore's Federal Practice, ¶ 0.416[3]. Accordingly, as the Supreme Court of Delaware is not conducting a trial de novo, Levitt v. Bouvier, 287 A.2d 671 (Del.Supr. 1972), and as plaintiffs have not even suggested that the Lynch decision has been vacated,[8] the Lynch judgment is final.
Plaintiffs contend that the Lynch notice was constitutionally defective. They assert that the notice to class members must contain information sufficient such that the decision to remain in the litigation or to opt out is meaningful. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As this relates to the instant situation, it is contended that defendants caused the Lynch notice to contain a material omission  the pendency of federally based actions seeking to secure the rights of the minority shareholders of TransOcean under federal securities and common law  and that Lynch is therefore not entitled to preclusion. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).
The court is of the opinion that this objection is without foundation in fact or in law. The class action notice was approved by the Delaware court on November 19, 1974. The notice was then mailed by plaintiffs' counsel in the middle of December 1974 and class members were given 30 days from receipt to file requests for exclusion. The form of the notice complied with the applicable Delaware rule of civil procedure.
Meanwhile, the Illinois action was certified as a class action, pursuant to plaintiffs' motion of November 1, 1974, and after briefing, on December 3, 1974. A proposed notice was presented to the court on December 13, 1974, and defendants were granted one week to file objections. While some objections were resolved by the parties, the balance were submitted to the court. It continued the matter until January 14, 1975, at which time the issue was held in abeyance until the case was assigned to another judge. Finally, on April 28, 1975, the notice was mailed, after the court approved its form and after a revised and updated draft was submitted by plaintiffs.
It is thus clear that when the Lynch notice was approved, a class had not been certified by this court. It therefore would have been next to impossible for the defendants to insure that the Lynch notice advised the potential class members of a pending federal class action. Interestingly, as defendants note in their reply memorandum, this is essentially what transpired in the Illinois action. The proposed notice originally presented to this court in December 1974 described only the pending Delaware action, which had been certified as a class action, but did not describe the Louisiana action. Thereafter, the Illinois notice *1217 was revised, as noted above, to reflect the pendency of the Louisiana case only after that action was certified as a class action.
Plaintiffs further complain, however, because the Illinois case was certified as a class action before the Lynch notice was mailed. They contend that defendants should have suggested a revision in Lynch advising the TransOcean shareholders of the federal case. The court is of the opinion that the duty of notifying the shareholders of the pendency of the Illinois action was on, if anyone, the plaintiffs, not the defendants. In any event, it is clear that a notice in Lynch merely informing them of the Illinois action, without more, would have been meaningless.
For plaintiffs' suggested revision to have had significance, it would have been necessary to advise the shareholders not only of the federal action, but also of the potential res judicata and/or collateral estoppel effects of the Delaware judgment, if any, on this action. Such advice would have been virtually impossible to give in the absence of a Delaware decision. Further, as defendants note by way of analogy, the notice sent in the Illinois action does not mention the potential res judicata effects, if any, of this case on the Louisiana class action.[9]
It appears that plaintiffs' contention is premised upon their conclusion that Delaware law favors corporate defendants and that the shareholders have been harmed because defendants won the "race to the bottom." Even if this were true, the court considers it irrelevant. The defendants did not choose Delaware as a forum. Their desire to try the Delaware case first, if such was in fact their desire, is clearly not unconstitutional.
Lynch was an action brought in chancery and, of course, was tried without a jury. Plaintiffs therefore argue that preclusion by that judgment is unconstitutional as it would deny their seventh amendment right to trial by jury in this court. Rachal v. Hill, 435 F.2d 59, 62-64 (5th Cir. 1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971); Cannon v. Texas Gulf Sulphur Company, 323 F.Supp. 990, 992-94 (S.D.N.Y.1971). Defendants, on the other hand, contend that a decree in equity, where there is no right to a jury, is nevertheless entitled to preclusive effect in an action at law where the parties are entitled to a jury.
Initially, it must be noted that the cases cited above by plaintiffs are not directly on point. In the instant situation the defendants seek at least in part to interpose preclusion to claims brought by and against identical parties or their privies. This circumstance has been recognized as one in which a prior judgment in equity may be used to preclude a subsequent action at law even though there is a right to a jury trial in the second action. Crane Co. v. American Standard, Inc., 490 F.2d 332, 342-43 (2d Cir. 1973); Rachal v. Hill, supra, at 63 n. 5, citing Painters District Council v. Edgewood Contracting Company, 416 F.2d 1081 (5th Cir. 1969); Foltz v. Pullman, Inc., 319 A.2d 38 (Del.Super.1974); Restatement, § 68, Comment j; Restatement Second, § 68, Comment d.
Nonetheless, on these facts, the court is of the opinion that defendants may assert res judicata only as to those plaintiffs who were before the court in Lynch. There can be no bar to the common law claims of the opt outs as these individuals have never had a right to litigate in a prior proceeding. This interpretation preserves the opt outs' right to a jury trial under the seventh amendment and, more importantly, protects their right to a day in court, a fundamental element of due process. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Hansberry v. Lee, supra, 311 U.S. at 40, 61 S.Ct. 115.
Defendants' reliance on Lynch and on Erie Railroad v. Tompkins, supra, to bar the common law claims of the opt outs is confounding. Defendants suggest that these decisions read together establish Lynch as controlling to all of TransOcean's shareholders. *1218 This result clearly would violate the due process rights of those shareholders who excluded themselves from the Delaware litigation.[10]See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra; Humphreys v. Tann, 487 F.2d 666, 671 (6th Cir. 1973), cert. denied, 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 307 (1974).
In sum, the court concludes that the shareholders of TransOcean who were parties in Lynch are barred by res judicata from raising their state law claims in this action.[11] However, the shareholders of TransOcean who opted out of Lynch, but remain as class members here, may assert their state law claims.

Count I
As noted above, the plaintiffs allege in Count I that defendants violated, inter alia, § 14(e) of the Securities Exchange Act of 1934 ("the 1934 Act"). It is clear that this count of the plaintiffs' complaint is not barred by principles of res judicata as this is a different cause of action than that brought, or which could have been brought, in Lynch. Clark v. Watchie, 513 F.2d 994 (9th Cir. 1975), cert. denied, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1976); Abramson v. Pennwood Investment Corp., 392 F.2d 759 (2d Cir. 1968). Nonetheless, this court's exclusive jurisdiction over the § 14(e) claim does not necessarily prevent the application of collateral estoppel principles. Clark v. Watchie, supra at 997-99; Abramson v. Pennwood Investment Corp., supra at 762; Boothe v. Baker Industries, Inc., 262 F.Supp. 168 (D.Del.1966). At issue here is not only whether collateral estoppel may be applied but also to what extent.
The defendants argue that the plaintiffs'[12] entire Section 14(e) claim is barred by the Lynch judgment. They contend that because the Vice-Chancellor held that defendants fulfilled their fiduciary duty of full disclosure of all facts surrounding the tender offer, plaintiffs are estopped to relitigate the issue of whether the circular contained misstatements and omissions of material fact. Alternatively, they contend that because the Vice-Chancellor held that defendants fulfilled their fiduciary duty and that there were no fraudulent misrepresentations in the tender offer circular, plaintiffs are estopped to relitigate the critical issue of fraud.[13]
Initially, plaintiffs assert that a state court determination of an exclusively federal claim cannot be given collateral estoppel effect. They next contend that collateral estoppel cannot apply here because there is a difference in the applicable legal standards between Lynch and this case. The plaintiffs also maintain that collateral estoppel can only be applied to determinations of factual issues essential to a prior judgment. Finally, they contend that they have alleged additional factually undisputed omissions and misstatements not considered by the Vice-Chancellor in Delaware and that said allegations cannot be barred.[14] For the reasons hereinafter stated, the court concludes that the Lynch judgment estops the plaintiffs' entire § 14(e) claim.
*1219 28 U.S.C. § 1738, the implementing statute of the full faith and credit clause of the United States Constitution, Article IV, § 1, requires this court to accord the Lynch judgment the same force and effect it would have in the courts of Delaware. Boothe v. Baker Industries, Inc., supra. On the other hand, while this court should give great consideration to Delaware's interpretation of collateral estoppel, "it is not necessarily bound by those interpretations." Schwegmann Brothers Giant Super Markets v. Louisiana Milk Commission, 365 F.Supp. 1144, 1147 (M.D.La.1973), aff'd 416 U.S. 922, 94 S.Ct. 1920, 40 L.Ed.2d 279 (1974), citing American Mannex Corporation v. Rozands, 462 F.2d 688 (5th Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972).
Plaintiffs contend that Delaware adheres to a very narrow view of the scope of collateral estoppel. Relying on § 71 of the Restatement,[15] they assert that a state court determination of an exclusively federal claim cannot be given collateral estoppel effect. They further argue that Delaware follows this rule, citing Hickman v. Hickman, 10 Terry 568, 49 Del. 568, 121 A.2d 689 (Del.Super.1956).
After reviewing a number of Delaware cases, the court concludes that, contrary to plaintiffs' argument, the Delaware law of preclusion is in accord with the general principles of collateral estoppel. See e. g., Tyndall v. Tyndall, 238 A.2d 343 (Del. 1968). Moreover, some Delaware courts have applied collateral estoppel broadly. For example, in Penn Mart Realty Company v. Becker, 298 A.2d 349 (Del.Ch.1972), the court precluded an entire state law fraud claim on a federal court's finding that no claim under Rule 10b-5 of the federal securities laws had been proven.
While the court in Hickman v. Hickman, supra, relied on § 71 of the Restatement, the decision is not controlling here. First, as the judge noted in Hickman, the question of whether to follow § 71 is one of public policy. Id., 121 A.2d at 693. In light of the extreme burden upon the courts, particularly the burden of multiple litigation arising out of the same transaction, the policy of ending litigation is essential. Moreover, the fairness of not requiring parties to relitigate matters once judicially determined is fundamental. The mere fact that Lynch was a state common law action and that this one is federal should not necessarily prevent the application of collateral estoppel. Second, since Hickman was decided, Delaware has taken a broader view of collateral estoppel. See Penn Mart Realty Company v. Becker, supra; Foltz v. Pullman, Inc., supra, (collateral estoppel applied regardless of whether privity existed). Finally, the Restatement Second has modified § 71 of the Restatement. See Restatement Second, § 68.1 (Tent. Draft No. 1, 1973) and (Tent. Draft No. 3, 1976), infra.
Of course, practically speaking, a Delaware court could not be faced with the question of whether a state court decision on an issue could collaterally estop the same issue in a federal securities case. Federal courts reaching the issue, and apparently applying federal law, have indicated that collateral estoppel may apply. See e. g., Clark v. Watchie, supra. Moreover, while federal courts have been granted exclusive jurisdiction in cases brought under the 1934 Act, the Restatement Second, Comment e to § 68.1(c) indicates that collateral estoppel can be applied in such cases unless the statutory basis for exclusive jurisdiction should be construed to require otherwise. The statutory basis of this court's exclusive jurisdiction does not require otherwise. The plaintiffs themselves note that the legislative history of § 27 of the 1934 Act, 15 U.S.C. § 78aa, is unedifying as to the Congressional motive for vesting exclusive jurisdiction in the federal courts.[16] Similarly, *1220 said history does not indicate that Congress intended to overrule generally applicable principles of collateral estoppel in cases arising under the Act. See H.R.Rep.No. 1383, 73d Cong., 2d Sess. (1934); S.Rep.No. 792, 73d Cong., 2d Sess. (1934).
Collateral estoppel, like res judicata, is a judicial doctrine designed to end litigation. Tyndall v. Tyndall, supra. However, it only precludes relitigation of those matters or issues that were litigated and which were necessary to a prior judgment.[17] Before collateral estoppel can apply, three questions must be answered affirmatively: (1) Was there a final judgment on the merits? (2) Was the party against whom the plea of estoppel is asserted a party, or in privity with a party, to the prior adjudication? (3) Was the issue decided in the prior adjudication identical with the one presented in the action at hand? Clark v. Watchie, supra at 998; Tyndall v. Tyndall, supra.
Both the first and second questions present no problem within the context of this case. As discussed earlier, the Lynch judgment was a final judgment on the merits. Likewise, the party/privity question has already been answered affirmatively. Determination of whether the issues are identical is more complicated. The court must make a two-part inquiry and ascertain whether the legal standards applied in each case are identical[18] and whether the issues in the two suits are identical. Clark v. Watchie, supra at 998; Tyndall v. Tyndall, supra.
The parties agree that essential factual determinations under equivalent legal standards are binding. The plaintiffs, however, maintain that Lynch cannot estop their federal claims because it is easier to establish liability under the federal securities laws than under Delaware law. The defendants, on the other hand, contend that it is easier, or at least not more difficult, to establish a claim under Delaware law than under § 14(e). Accordingly, as defendants were already judged against a higher standard of accountability and were found innocent of any breach of that standard, relitigation is argued to be inappropriate.
The court has examined the record, Florasynth Laboratories, Inc. v. Goldberg, 191 F.2d 877, 880 (7th Cir. 1951); 1B Moore's Federal Practice, ¶ 0.443[4] at 3913, as well as the Lynch opinion, and concludes that the legal standard of disclosure applied by the court in Lynch is at least the same as, if not more stringent than, the legal standard to be applied in this case. Delaware law requires that the conduct of majority shareholders of a corporation toward minority shareholders be tested by the same standards of fiduciary duty which directors observe toward all their shareholders. Lynch v. Vickers, supra at 573. As applied in Lynch, defendants were held to a duty of "full disclosure" of all facts surrounding the tender offer. Id. at 573. That is, defendants were required to adequately disclose all relevant facts and circumstances surrounding the preparation of the circular. Id. at 575.
Section 14(e) requires, inter alia, that a person making a tender offer refrain from making a misstatement of a material fact or from omitting a material fact which makes a statement contained in a tender offer circular misleading. There is no affirmative obligation under § 14(e) to make full disclosure.[19] Thus, the duty of full disclosure imposed in Lynch is a higher standard of accountability than that imposed under § 14(e).
*1221 In support of their contention that the issues here and in Lynch are identical, defendants rely in part on the Restatement Second.[20] They argue that the term "issue" should be viewed broadly and that the ultimate issue of full disclosure decided in Lynch is the same as the issue in this case. They further contend that plaintiffs' entire § 14(e) claim is precluded even though additional factual assertions related to the tender offer have been alleged in the complaint here.
Plaintiffs argue that collateral estoppel applies only to those facts upon which specific findings were made in the prior proceeding. Further, they contend that assuming arguendo some preclusive effect is given to the Lynch judgment, the Vice-Chancellor did not determine whether any of some thirteen "omissions were omissions of material facts `necessary in order to make the statement made, in the light of the circumstances under which they [were] made, not misleading,'"[21] and that these additional allegations bar total preclusion.
Section 68 of the Restatement Second allows estoppel when an issue of fact or law is actually litigated and the determination is essential to the judgment. Comment c to Section 68 states that when there is a lack of total identity between the particular matter presented in the second action and that presented in the first, there are several factors which should be considered in determining whether an "issue" in the two proceedings is the same:
Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings?
The court has reviewed the record in Lynch and the evidence submitted by plaintiffs in support of their motion for partial summary judgment. Both Lynch and this case are bottomed in the quality of the disclosures in the tender offer circular. The plaintiffs here rely on thousands of pages of documents produced in Lynch as well as on depositions taken in Delaware. It is clear that there is a substantial overlap between the evidence and arguments advanced in the two proceedings. It is likewise clear that pretrial preparation and discovery relating to the Lynch action could reasonably have been expected to have embraced this action. Finally, as discussed earlier, the elements of the claims in the two cases are closely related.
Plaintiffs' reliance on § 68.1(c) of the Restatement Second as an exception to § 68 is misplaced. Section 68.1(c) provides that preclusion may be barred by "factors relating to the allocation of jurisdiction between [courts]." However, Comment e to § 68.1(c) states that the question of preclusion in a case such as this should be resolved in light of the legislative purpose of vesting exclusive jurisdiction over federal securities act claims in this court. As noted earlier, there is nothing in the legislative history of the 1934 Act which indicates a purpose for vesting exclusive jurisdiction in a federal court. In the absence of articulated reasons which would trigger § 68.1(c), the court declines to accept it as controlling.
*1222 Plaintiffs' further contention that the Vice-Chancellor's finding of full disclosure was not essential to his judgment is erroneous. He specifically stated that the tender offer circular must be judged in light of the principle that the offerors owed plaintiffs a duty to exercise complete candor. Lynch v. Vickers, supra at 573. Moreover, plaintiffs' argument that this finding is not entitled to preclusive effect because it is merely generalized also must fall.
It is true that federal courts have declined to apply collateral estoppel to a prior judgment when there has been an absence of specific findings. Fink v. Coates, 323 F.Supp. 988, 990 (S.D.N.Y.1971). In the instant situation, however, the Vice-Chancellor thoroughly analyzed the voluminous evidence before him and entered an opinion concluding that defendants did not breach their duty. This court has further examined the Lynch record to ascertain what was argued and what evidence was heard. Here, unlike Fink v. Coates, supra, there is no reasonable doubt as to what was decided.
Having found that the issue of full disclosure decided in Lynch is the same as the issue of whether the tender offer circular contained any misstatements or omissions of a material fact as required by § 14(e), the question remains whether plaintiffs are estopped to obtain a different result even though they are relying on additional evidentiary facts.[22] Defendants contend that plaintiffs should be precluded because they had their day in court and because the issue of full disclosure may not be split into pieces.
A number of modern authorities would preclude plaintiffs from obtaining a different decision on the issue of full disclosure even though they are relying on different evidentiary facts. Professor Moore concludes that where new factual assertions are related to the subject matter and relevant to the issues already litigated, the issue cannot be "split" and new factual assertions are collaterally estopped. 1B Moore's Federal Practice, ¶ 0.443[2] at 3903-04.
The Restatement Second would also preclude relitigation of an issue where new evidentiary facts are alleged.[23] Comment c to § 68 states as follows:
An issue on which relitigation is foreclosed may be one of evidentiary fact, of "ultimate fact" (i.e., the application of law to fact), or of law. . . . Thus, for example, if the party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact. (Emphasis added)
Applying the Restatement Second approach to the case at bar, the plaintiffs must be estopped. Having litigated the ultimate issue of full disclosure and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact. Moreover, the court finds that the issue of full disclosure was actually recognized by the parties as important and by the Vice-Chancellor as necessary to the Lynch judgment.[24]Restatement Second,

*1223 § 68, Comment j.
As noted earlier in this opinion, the court must determine what a Delaware court would do under similar circumstances. Although there is no Delaware authority precisely on point, it is clear that Delaware courts apply collateral estoppel to prevent relitigation of broad issues in the securities area.[25]See Penn Mart Realty Company v. Becker, supra.
The court has likewise not found any cases in the federal securities law area dealing with the precise questions presented here. On the other hand, there is no impediment to applying the Restatement Second approach in a 1934 Act case. In cases holding that state court rulings may have collateral estoppel effect in Securities Exchange Act claims, the federal courts have applied collateral estoppel to the ultimate fact in the federal claim.
In Boothe v. Baker Industries, Inc., supra, a federal court weighed the collateral estoppel effect of a state court's finding under state law that a proxy statement was full and complete and that the ratio of exchange on the merger was fair. The state court had entered these findings of ultimate fact when it approved the parties' settlement of the state law claim. The federal court found no reason of public policy why a final judgment such as that entered in the state court case should not bar further action by a stockholder attacking the same transactions. See also Abramson v. Pennwood Investment Corp., supra.
To summarize, in light of the broad definition of issue as set forth in the Restatement Second, the Delaware authority discussed, and the fact that federal courts apply collateral estoppel to preclude relitigation of ultimate facts in cases brought under the Securities Exchange Act, this court concludes that the ultimate issue of full disclosure decided in Lynch is the same issue to be decided here. Plaintiffs are estopped to relitigate this issue even though they rely on some different or additional factual assertions. Reliance on such evidentiary facts cannot allow plaintiffs to obtain a different finding on the ultimate issue of full disclosure, especially where, as here, the issue was recognized by the parties as important and by the adjudicator as necessary to the prior judgment.
To establish a § 14(e) claim one must prove a material misstatement or an omission of a material fact necessary to make the statements made, in light of the circumstances, not misleading, or fraudulent, deceptive, or manipulative acts or practices. The court concludes that the plaintiffs' claims of material misrepresentations or omissions are estopped by the Vice-Chancellor's finding that the defendants fulfilled their fiduciary duty of full disclosure of all the facts and circumstances surrounding the tender offer.
The court is further of the opinion that the plaintiffs' limited allegations of fraudulent, deceptive, and manipulative practices are also estopped. As noted, the Vice-Chancellor found that defendants fulfilled the fiduciary duty they owed to plaintiffs. This finding precludes relitigation of the limited allegations mentioned above as the fulfillment of the aforesaid duty implies the absence of fraud, deceit, or manipulation. Moreover, the Vice-Chancellor specifically held that there was neither actionable coercion nor fraudulent misrepresentations made in connection with the tender offer. Lynch v. Vickers, supra at 576. Accordingly, the entire § 14(e) claim of those plaintiffs who are members of both the Delaware and Illinois classes is estopped.[26]

*1224 Plaintiffs' Motion

Plaintiffs have moved for summary judgment as to liability on Count I.[27] They contend that the tender offer circular contained numerous material misrepresentations and omissions any one of which can establish liability. These allegations can be broken down into three major areas: those relating to the assets of TransOcean and their valuation; those relating to the $12.00 tender offer price; and those relating to the position of the TransOcean management. The court will not repeat all of the allegations at issue, but it will briefly summarize some of the alleged and undisputed omissions.
The tender offer circular failed to specifically disclose that TransOcean made a new and important oil and gas discovery on Block 281 of South Marsh Island. There was no mention of the fact that Forrest E. Harrell, Financial Vice-President and Treasurer of TransOcean, had appraised the net assets of TransOcean at $250.8 million shortly before the tender offer was made. The tender offer circular failed to state with detail the assumptions made by management underlying the $200 million valuation of TransOcean. There was no disclosure of the net asset value of TransOcean's stock when it was purchased by Swift in 1970 at $12.88 per share. While certain directors of TransOcean indicated in the circular that they would not accept the tender offer, these directors failed to indicate the reasons for their position. Finally, the circular did not state that a few months prior to the $12.00 tender offer at issue, Esmark had authorized the open market purchase of up to 1.5 million shares of TransOcean stock at a price not in excess of $15.00 a share.
Plaintiffs assert that said omissions establish liability as a matter of law. Defendants, in their response of December 22, 1975, contend, inter alia, that the omissions and misstatements were not material, that the omissions were not required to be disclosed under § 14(e), and that the alleged omissions and misstatements were not accompanied by the required intent. These arguments are advanced in defendants' memorandum in support of their motion for summary judgment of April 14, 1976. Plaintiffs, in their response of June 9, 1976, maintain that they are entitled to judgment as known material facts were admittedly omitted or misstated. Finally, in their reply memorandum of July 23, 1976, defendants once again contend that they did not violate § 14(e) and that they are entitled to judgment as a matter of law.
After extensive review of the memoranda filed by both parties and the documents and depositions in support thereof, the court concludes that the plaintiffs' motion for summary judgment must be denied. The parties agree that materiality requires that omissions or misstatements have a significant propensity to affect a decision. That is, there must be a substantial likelihood that, under all the circumstances, an omission or a misstatement would have assumed actual significance to the reasonable shareholder. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976). Because this determination requires the application of the legal standard of the "reasonable shareholder" to the instant set of facts, summary judgment is inappropriate. Id. The court cannot say that any of the alleged omissions and misstatements are material as a matter of law.

Conclusion
In sum, all of the minority shareholders of TransOcean who are members of the *1225 class of plaintiffs in Lynch and this case are precluded under principles of res judicata and collateral estoppel from pursuing their state law and § 14(e) claims. Those shareholders who opted out of the class of plaintiffs in Lynch may proceed with their state law and § 14(e) claims. Finally, the plaintiffs' motion for summary judgment as to liability on Count I is denied as to § 14(e) and stricken as to § 14(d)(4).[28]
For the reasons stated, it is therefore ordered that the plaintiffs' motion for summary judgment as to liability on Count I shall be, and the same is hereby, denied in part, and stricken in part with leave to renew at a later date.
It is further ordered that the defendants' motion for summary judgment on Counts I and III shall be, and the same is hereby, granted in part, denied in part, and stricken in part with leave to renew at a later date.
NOTES
[1] Defendants' motion for summary judgment is based in part upon a judgment in a Delaware state action and in part on the merits of plaintiffs' claims. At this time the court is deciding only that portion of the defendants' motion relating to the Delaware judgment. This approach, pursuant to defendants' suggestion, will allow the court to consider the other aspects of the motion after plaintiffs not presently before the court on this motion (see note 4 infra) have completed their discovery.
[2] The class action is brought in the name of three plaintiffs, two of whom rejected the tender offer.
[3] Although defendants moved for summary judgment on all counts of the complaint, the court is only deciding issues relating to Counts I and III because discovery is continuing on Count II, pursuant to agreement of the parties.
[4] Class litigation involving the tender offer was also filed in federal court in Louisiana in 1974. Various funds, foundations, and trustees, all of which opted out of the Illinois, Louisiana, and Delaware actions, filed a complaint in federal court in New York in August 1975. The Judicial Panel on Multi-district Litigation ordered the Louisiana and New York cases transferred to this court pursuant to 28 U.S.C. § 1407 on May 21, 1976.
[5] Although some defendants in this action, TransOcean and the directors of Esmark, were not parties in Lynch, these defendants are in privity with the Lynch defendants. TransOcean is in privity with its Board of Directors and Esmark's Board of Directors is in privity with Esmark. Thus plaintiffs' argument that TransOcean cannot assert preclusion as it was not a party in Lynch must fail, as preclusion can be asserted by one in privity. Epstein v. Chatham Park, Inc., supra.
[6] The case is pending on appeal in the Supreme Court of Delaware.
[7] Restatement § 41, Comment d provides, inter alia, that "[w]hether the taking of proceedings in an appellate court deprives the judgment of its conclusive effect in another action depends upon whether the taking of such proceedings operates to vacate the judgment."

Restatement Second, § 41, Comment f provides, inter alia, that a "judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo."
[8] See note 7 supra.
[9] See note 4 supra.
[10] Moreover, such a result would permit defendants to circumvent principles of res judicata, collateral estoppel and the opt out provisions of the Delaware class action rules, which are identical to Rule 23 of the Federal Rules of Civil Procedure.
[11] To the extent that Count I raises claims identical to those alleged in Count III, they are also barred by res judicata as to the non opt outs.
[12] When the court refers to plaintiffs in this section of the opinion, it is referring only to those plaintiffs who are members of both the Delaware and Illinois classes. Defendants do not contend that Lynch precludes the § 14(e) claim of the opt outs.
[13] Defendants further contend that in any event various allegations raised in plaintiffs' complaint are estopped by Lynch. It is argued that allegations concerning TransOcean's assets and their valuation are estopped. Various allegations concerning the $12 tender offer price are also asserted to be estopped.
[14] The court will not repeat the arguments advanced by plaintiffs and already considered under the section of this opinion dealing with Count III.
[15] § 71 provides as follows:

Where a court has incidentally determined a matter which it would have had no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly.
[16] See Loss, Securities Regulation 997 (2d Ed. 1961).
[17] See Foltz v. Pullman, Inc., supra at 40; Commissioner of Internal Revenue v. Sunnen, supra, 333 U.S. at 597, 68 S.Ct. 715; Cromwell v. County of Sac, supra at 353.
[18] Of course, as discussed in the text infra, if the plaintiffs' burden of establishing their claim was shown to be easier in this case, there could be no preclusion.
[19] Plaintiffs seem to take the position that to recover under § 14(e) they need show only a material omission or misrepresentation in the tender offer. Thus, plaintiffs read § 14(e) as requiring full disclosure. Even if plaintiffs were correct in their reading of § 14(e), then the standard applied in Lynch and the standard to be applied here would be the same, that is, requiring full disclosure and prohibiting the omission or misstatement of a material fact.
[20] The plaintiffs maintain that whether the court looks to the decisional law of Delaware, the Restatement, or the Restatement Second, Lynch can have no preclusive effect in this cause. They further suggest that little, if any weight, may be accorded to the Tentative Draft of the Restatement Second. However, the United States Supreme Court has given weight to tentative drafts. See TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 445, 96 S.Ct. 2126, 2131, 48 L.Ed.2d 757 (1976). Moreover, the Restatement Second should be entitled to considerable weight because it represents the views of the reporters, an advisory committee of scholars, and the Council of the American Law Institute.
[21] Plaintiffs' Memorandum in Opposition to Defendants' Motion For Summary Judgment at page 50.
[22] In their memorandum in support of their motion for summary judgment, defendants, at page 28, state the issue as follows:

. . . whether a state court decision on an ultimate fact will collaterally estop the same ultimate fact in a Securities Exchange Act claim where the plaintiffs in the federal action allege additional evidentiary facts.
[23] According to Illustration 4 to Comment c of § 68, it is reasonable to require a plaintiff to bring forward all the evidence in support of his claim in the initial proceeding.
[24] § 68.1(e)(ii) and Comment i would permit relitigation of an issue actually litigated and determined if it is clear that it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action. Plaintiffs have neither contended nor shown that this exception is applicable here. In light of the substantial overlap between Lynch and this case, the court would be hard pressed to find said exception applicable.
[25] As defendants have noted, while Delaware courts do not precisely define the term "issue," they clearly apply collateral estoppel to ultimate issues such as justification, negligence, proximate cause, and fairness. See, e.g., Tyndall v. Tyndall, supra; Petrucci v. Landon, supra; Foltz v. Pullman Co., supra; Auerbach v. Cities Service Co., 36 Del.Ch. 554, 134 A.2d 846 (Del.1957). Thus, a Delaware court would certainly apply collateral estoppel to an issue such as full disclosure.
[26] Having found the Section 14(e) claim barred on the bases articulated in the text, the court need not reach defendants' additional argument that the entire claim under § 14(e) is also barred because the Vice-Chancellor found no fraud. Defendants' position presupposes that a necessary element of plaintiffs' § 14(e) claim is an intent to defraud as is required for Rule 10b-5. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Plaintiffs vigorously dispute this contention.
[27] Count I alleges a violation of §§ 14(d)(4) and 14(e) of the 1934 Act. The court is only addressing the latter section at this time as the § 14(d)(4) claim was not briefed with sufficient clarity. Thus, when the court refers to "plaintiffs" in this section of the opinion, it is referring only to opt outs because those individuals who were members of the class in Lynch are estopped on their § 14(e) claim.
[28] See note 27 supra, concerning plaintiffs' § 14(d)(4) claim.